*In re* MARRIAGE OF JOHN T. MURPHY, Petitioner-Appellant, and SUSAN E. MURPHY, Respondent-Appellee.

Third District No. 82—404

Opinion filed August 26, 1983.

Stewart R. Winstein, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellant.

John W. Robertson and Pamela M. Anderson, both of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee.

JUSTICE BARRY delivered the opinion of the court:

John T. Murphy appeals from orders of the circuit court of Rock Island County, Illinois, pertaining to the award of maintenance, distribution of property, and award of attorney fees.

After nine years of marriage, John and Susan sought and obtained a dissolution of marriage. By agreement of the parties, custody

of their two sons, age three and six, was awarded to Susan. The parties vigorously contested the division of property and allocation of support at the second half of the bifurcated hearing. However, a close examination of the record reveals that most of the facts and circumstances of the parties are not disputed.

John was 35 years of age at the time of the hearing and was employed as a high school principal with a gross salary of $40,000 per year. His take-home pay is $1,051 every other week, plus $7.50 automobile stipend, and he testified that his living expenses amount to about $1,150 per month. He currently lives in an apartment which is furnished in part with furniture from the marital home.

Susan was 31 years old at the time of the hearing and worked as a registry nurse at Lutheran Hospital in Moline two to four days per month, earning $8.23 per hour. She testified that she has not worked full time because she has thought it important to be home with the two children, but that once the marriage dissolution proceedings are over, she intended to seek full time employment and expects to have take-home pay of $700 per month. Susan estimated her living expenses at $780 per month per month and the needs of the children at $682 per month plus $300 per month for child care. She stated that she did not need maintenance for herself but would need $980 per month child support. She testified that she plans to sell the marital home and to use the equity to purchase a smaller home that will be less costly.

The parties own two cars: his has a valuation of $2,925 and hers, $5,850. Susan owes her parents $2,000 which was borrowed to buy her car. The marital residence is valued at $105,000 subject to a $65,000 mortgage. John has contributed to the Illinois Teachers Retirement System for 10 years, and his contributions total about $18,200 which he is entitled to withdraw if he ceases to be employed by Illinois schools. There was no evidence as to the present value of his future retirement rights, which, of course, would take into account the contributions by his employers. During the first year John was employed, and prior to his marriage, his contribution to the Illinois Teachers Retirement System was $1,005. The parties also owned many items of antique furniture which they had appraised prior to the hearing. They were in general agreement as to which items of personal property were marital property and which were not.

The main dollar item of dispute centered around a check for $10,000 which John's mother had given him in October 1975, and which bore the designation "Loan" on its face. John testified that his mother loaned the money to him, that he deposited it in a joint ac-

count, and that he used it partly as a down payment on a home, partly to purchase an adjoining lot, and partly for floorcoverings, landscaping, and other details of the home they were building. On cross-examination, John admitted that he had not expected to repay the $10,000 to his mother, and that he had not listed the "loan" as a debt of the marriage when he filed for dissolution. However, he testified that in December of 1981, several months prior to the judgment of dissolution, his mother told him she expected to be repaid. Susan testified that she had never discussed the $10,000 with John's mother, that she had not wanted John to accept money from his mother but he did anyway, and that he told her part was repayment of an earlier loan to his mother from his father's estate and the rest was an advance on his inheritance. Susan introduced a savings account record from November 1975 which showed a $10,000 deposit followed by withdrawals over the next 13 months as follows: January 1976 - $4,060; April - $100; August - $65; October - $120; December - $4,000. She testified that to her knowledge, none of these payments were used toward the construction of the house. John later testified that the $4,060 was part of the down payment, and the $4,000 withdrawal was used to purchase the adjoining lot.

In its opinion and order, the trial court divided the marital property on a ratio of approximately two to one, with Susan receiving property of about twice the value of the property awarded to John. The court stated that the award was determined by the factors set out in sections 503 and 504 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, pars. 503, 504), with particular attention to the substantial difference in earning capacity and to the tax consequences of the award.

The court awarded Susan the marital home, most of the personal property in the home, and the 1981 Toyota. John was awarded the equity in the Teachers Retirement System, the 1977 Toyota, the personal property located in his apartment, and several other items of furniture, tools, and sport equipment. The court ordered no child support, but ordered John to pay all dental and medical expenses of the children not covered by insurance in excess of $200 per year. Finally, the court ordered John to pay maintenance of $900 per month for 180 months (15 years) and to pay $1,500 toward Susan's attorney fees. The court found that the $10,000 check from John's mother was not a debt and that Susan must repay the $2,000 loan from her parents for her car and she must assume the mortgage on the home.

John has appealed from the order of the trial court, asserting three errors as grounds for reversal: (1) distribution of property; (2)

award of maintenance; and (3) ordering payment of Susan's attorney fees.

■ The first issue is whether the trial court erred in awarding Susan the house. According to the figures submitted by John, Susan has been awarded assets having a total value of $45,702 while he has been awarded only $23,892. However, Susan makes a different computation. She agrees that the property awarded to John has a value of $23,892, but she stated that her property has a value of only $37,702. She reaches this figure by deducting from the value of the house the estimated costs of sale of $7,500 and the accrued real estate taxes of $2,000.

We think it noteworthy that the trial court stated that a two-to-one ratio for division of property would be equitable considering the disparate earning capabilities of John and Susan. Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)) provides that the trial court "shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including: *** (4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children; *** (7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; (8) the custodial provisions for any children; *** (10) the reasonable opportunity of each spouse for future acquisition of capital assets and income."

We think it clear that the trial court properly took into account the factors relevant to this case. Susan's training and occupation are not likely to enable her to earn more than one-half John's income, and the evidence indicates that full-time employment may be difficult for her to find in any event. John argues that his only asset is inaccessible to him unless he quits his position and and withdraws his contributions from his retirement plan, and thus, that he is denied any chance of planning for the future. We do not agree. John's pension rights provide him with a very secure future, particularly for his retirement years, and thus reduce considerably the need to accumulate assets for his retirement. True, he is back where is started nine years ago in terms of acquiring real estate and building up equity in a home, but that is the price of meeting the needs of the other members of the family for which he is responsible. In other words, John must now provide housing for himself and for his children in two different locations, and the cost of that will be more than the cost of providing one

family home.

We apply the standard so well-stated in *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129:

"We start with the premise that a circuit court judge's resolution of property division is fettered only by the range of reason and that his judgment will not be disturbed in the absence of an abuse of discretion. It is a well-established rule that a reviewing court is not justified in substituting its discretion for that of the trial court. [Citation.] In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court but rather did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed the bounds of reason and ignore recognized principles of law so that substantial injustice resulted."

Looking at the evidence before the trial court, we believe the court did not act arbitrarily or abuse its discretion in dividing the marital property so as to award the marital home to Susan. The record makes clear that the trial court conscientiously evaluated the circumstances of the parties. He balanced John's superior earning capacity and retirement benefits with providing Susan with the marital home, considering that Susan is the custodial parent, that the children are quite small, and that she contributed to the acquisition of the marital assets with her savings and earnings when first married, and later as homemaker.

■ John relies upon *Clearman v. Clearman* (1980), 85 Ill. App. 3d 584, 407 N.E.2d 189, where this court reversed a property distribution that awarded the wife assets valued at $65,620 and the husband assumed debts in excess of his assets to the extent of $25,319. We noted in *Clearman* that the facts of that case did not warrant an equal apportionment but nonetheless "absent here are those extraordinary circumstances that create a substantial imbalance in the equities as to deny one party any proportion at all." (85 Ill. App. 3d 584, 588, 407 N.E.2d 189, 192.) The circumstances of the case before us are not like those of *Clearman*. John has received assets having a value of $23,892 by his own testimony. The court concluded that justice required awarding Susan assets having twice the value of those awarded to John in order to balance other factors. Although we might not have exercised our discretion in the exact same manner had we been the trial judge, we believe the distribution here was certainly within the "range of reason" and not an abuse of discretion.

John also challenges the award of $900 per month maintenance to

Susan for 15 years, the expiration of which will mark the end of the minority of the youngest child. John argues that Susan did not ask for maintenance, that she estimated her expenses at $780 per month which is less than the award, and that she should be expected to return to work full time.

We have carefully examined the record from which it is clear that Susan testified that she needed $982 per month to meet the expenses of caring for the two young children of the couple. In addition, she estimated her own expenses at $780 per month which she would meet with estimated income of $700 per month when she found full-time employment. Regardless of whether she requested support for her children or maintenance for herself, it is clear that Susan as the custodial parent would need $1,762 each month to support herself and her children, and that she could provide only $700 of that amount from her own earnings. The award of the trial court was actually $162 per month less than her estimated needs.

■ At the hearing on John's petition for rehearing, Judge De-Doncker made clear that the maintenance award was entered in order to assure the maximum tax advantage to the parties. By utilizing an "unallocated maintenance" award, rather than simple child support, the trial court enabled John to deduct the full maintenance payment as an itemized deduction for purposes of his Federal income tax. The trial court reasoned that the substantial reduction in tax which will result is then passed on to Susan in the form of a greater maintenance payment than would otherwise be possible.

As a single person with a salary of $40,000, John will be in a higher tax bracket than Susan, who will have two dependents and the interest on mortgage payments to deduct. Accordingly, the tax consequences of the court's maintenance decision are substantial. Trial courts should take into account the tax consequences of the awards that are ordered. (*In re Marriage of Belluomini* (1982), 104 Ill. App. 3d 301, 432 N.E.2d 958; *In re Marriage of Mass* (1981), 102 Ill. App. 3d 984, 431 N.E.2d 1.) In *Belluomini*, the reviewing court specifically approved an order providing for unallocated maintenance payments as a method of reducing the tax burden on the husband in a situation where the husband was in a much higher tax bracket than the wife. See also *Bellow v. Bellow* (1981), 94 Ill. App. 3d 361, 419 N.E.2d 924; *Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 387 N.E.2d 346.

■ ■ According to the record, John receives take-home pay of $1,058 every other week for a total of $27,508 annual net income. John estimated his living expenses at $1,150 per month. Adding together John's expenses of $1,150 and his monthly maintenance pay-

ment of $900, John will spend $24,600 per year, which is $2,900 less than his net income. Under these circumstances we certainly cannot say that the order of the trial court awarding $900 per month unallocated maintenance was contrary to the manifest weight of the evidence. When the resources are adequate to do so, it is appropriate to award the spouse seeking maintenance the whole difference between her resources and her reasonable needs. (*Simmons v. Simmons* (1980), 87 Ill. App. 3d 651, 409 N.E.2d 321.) Such is the attempt here, and we find no error in the award as ordered.

■ John's final contention is that the trial court erred in ordering him to pay one-half of Susan's attorney fees— $1,500. John does not dispute the amount of the fees but only questions whether the trial court abused its discretion in determining that John was more able to pay that part of Susan's fees than she. Susan's ability to meet her own living expenses is dependent upon her success at obtaining full-time employment as a nurse at a time when jobs are not readily available. Even assuming her full-time employment, all of her resources will be required to meet the living expenses of herself and the two children. As we have indicated previously, John has $2,900 additional income each year in excess of his own living expenses and the maintenance payment he must make. Thus, we conclude that the trial court's order was not an abuse of discretion.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

STOUDER, P.J., and SCOTT, J., concur.