*In re* MARRIAGE OF MARY FRANCES SCHROEDER, Petitioner-Appellant, and PAUL D. SCHROEDER, Respondent-Appellee.

Fourth District   No. 4—90—0178

Opinion filed June 18, 1991.

158

Ted E. Barylske, of Alton, for appellant.

Michael J. McDonald and Howard Lee White, both of Schwarz, Self, White, Emons & McDonald, of Jerseyville, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

After a contested hearing on issues other than grounds, a judgment of dissolution of marriage was entered for petitioner Mary Schroeder and respondent Paul Schroeder on November 15, 1989. Following petitioner's motion for reconsideration of the issues of child support and maintenance, division of property, and allocation of marital debt and medical expenses, the trial court reaffirmed as to all matters disputed in this appeal.

Petitioner and respondent were married in May 1969. In 1976, the parties purchased the marital home in Jerseyville, Illinois, as well as the real estate and business now called "Jacoby-Schroeder Funeral Home," which respondent has operated since that time as a sole proprietorship. Respondent also has been employed since 1972 as Jersey County coroner. Five children were born to the marriage, four of whom were minors at the time of judgment, the youngest being 6 and the oldest being 16 years of age. Until the time of filing the petition for dissolution, petitioner had not worked outside the home, but then obtained part-time employment earning approximately $380 gross per month.

To determine "net income" for purposes of respondent's child support obligation, the trial court averaged weighted business earnings of the funeral home proprietorship for the six years 1984 through 1989, represented by 1984 through 1988 income tax returns and a 1989 projected-income "statement" prepared by respondent's accountant. The court then added respondent's 1988 cor-

oner's salary and deducted 25% for Federal and State taxes and 13.2% for self-employment FICA taxes. The court arrived at a weighted average net income of $47,767 and assessed respondent's monthly child support obligation at $1,592 for the four minor children, in accordance with the 40% minimum statutory guideline of section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)).

The 1987 and 1988 business income of the parties, as established by their income tax returns, was $102,629 and $112,085, respectively. Respondent projected 1989 business income at $24,879. The reliability of the 1989 business-income projection was disputed at trial and, on the basis of cash receipts, data for the first six months of 1989 indicates an income level at least equivalent to that of 1988.

In allocating the equity value of marital property, the court awarded petitioner $15,873, represented primarily by a newly purchased second residence for petitioner and the children and one automobile. Respondent received marital property with an equity value calculated at $47,032, represented primarily by the marital home; three automobiles; and the funeral home, land, building, and assets—the only income-producing property.

In addition, the court awarded petitioner $40,000 as maintenance in gross, payable over a 10-year period at $333.33 per month. Further, respondent was to maintain the health insurance on the four minor children and the parties were each to pay one-half of any uncovered medical expense incurred on behalf of the minor children.

Petitioner obtained appraisals on the two residences, the funeral home business, and the personal property of the parties, which were submitted at trial as joint exhibits. Petitioner paid the $1,100 appraiser's fee with money borrowed from her parents.

Pursuant to stipulation of the parties, the court's February 1988 order awarded petitioner temporary child support and maintenance, and ordered respondent to pay the mortgage on petitioner's residence (purchased jointly by the parties to allow respondent to continue occupancy of the marital residence). At the time of judgment, the court ordered the mortgage payments made by respondent during 1989 pursuant to the temporary order of 1988 be designated as maintenance paid by respondent and received by plaintiff.

On appeal, petitioner argues the trial court erred in the following respects: (1) averaging six years' business profit, as an improper method of determining net income as defined under section

505(a)(3) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(3)), resulting in an erroneous child support award below the minimum statutory percentage; (2) apportioning of the minor children's contingent medical expenses uncovered by insurance; (3) failing to consider the circumstances of the parties as enumerated in the statutory factors of section 503(d) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)), as shown by the award of 75% of the equity value of marital property to respondent and 25% to petitioner; (4) failing to consider the factors under section 504(b) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 504(b)) in its award of maintenance; (5) designating the payment for appraisal fees; and (6) designating as maintenance the mortgage paid by respondent in 1989 pursuant to the temporary order of 1988 in that (a) such designation amounted to a retroactive modification of the parties' agreement on temporary matters and (b) the court lacked jurisdiction to modify the order for temporary support as no petition requesting modification had been filed by either party pursuant to the provisions of section 501(d) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 501(d)).

As most of the issues cited by petitioner are contingent on the amount of income available to respondent, we first consider the trial court's method of calculating net income. As a preliminary matter, respondent first argues the trial court made sufficient findings to support a deviation from the statutory guidelines for minimum child support under section 505(a)(2) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(2)). This contention is without merit. The record makes clear the trial court intended to comport with the 40% minimum statutory guideline when it determined respondent's net income was $47,767 and set respondent's support obligation at $1,592 per month. The issue then becomes whether the court's methodology for calculating "net income" by use of a weighted six-year average comports with requirements of the statute.

■ "Net income" under the Act is defined as income from all sources minus deductions for "properly calculated" Federal and State income taxes, and social security payments. (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(3).) The requirement of properly calculated deductions necessitates the use of a base figure extracted from the most recent accurate income data (see *In re Marriage of Werner* (1986), 144 Ill. App. 3d 263, 266, 493 N.E.2d 1199, 1201; see also *In re Marriage of Stockton* (1988), 169 Ill. App. 3d 318, 324, 523 N.E.2d 573, 578), and militates against a methodology of averaging, including the weighted averaging employed here.

Petitioner argues the use of a six-year weighted income average amounts in essence to a deduction from current income for prior years when income levels were lower, and there is no provision for such a deduction under 505(a)(3) of the Act. While we cannot agree an average of six years' income amounts to an improper "deduction" from net income, it is apparent data six years old *cannot* reflect the current circumstances of the parties to enable the court to comport with (or deviate from) the guidelines under section 505(a) of the Act. In *Smith v. Smith* (1979), 73 Ill. App. 3d 423, 392 N.E.2d 292, the court found that entry of a judgment, including provisions for child support and maintenance, six years after the last hearing on the circumstances of the parties was unreasonable at the time of entry and, further, would be immune from modification on the basis of changed circumstances because the condition of the parties at judgment had not been considered. (*Smith*, 73 Ill. App. 3d at 426, 392 N.E.2d at 295.) Similarly, in this case, the use of income data going back six years violates the purpose of the Act to make reasonable provision for spouses and minor children during and after litigation. Ill. Rev. Stat. 1989, ch. 40, par. 102(5); *In re Marriage of Brand* (1984), 123 Ill. App. 3d 1047, 463 N.E.2d 1037.

While it is appropriate to consider prior years' documentation to ascertain income trends when future income is uncertain (*In re Marriage of Butler* (1982), 106 Ill. App. 3d 831, 436 N.E.2d 561; *In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 398 N.E.2d 641), we conclude deviations from reliable current income data require a compelling showing of a definitive pattern of economic reversals. No such showing is presented by the facts of this case. Indeed, with the exception of 1986, when respondent earned approximately $1,500 less than in 1985, the income-tax returns for the five years prior to trial indicate respondent's business profits substantially increased from year to year; 1988 profits were over five times greater than 1983 profits.

■■ Respondent's unaudited 1989 business statements and income projections raise substantial doubt as to the propriety of expense deductions, purchase of assets unaccounted for, accelerated debt payment, and bad-debt write-offs. Furthermore, both the cash flow into the business and respondent's draw as proprietor for the first six months of 1989 exceed those amounts for a similar period in 1988, leaving the projected 75% profit downturn substantially unsupported. The evidence fails to support reliability of the 1989 data. Therefore, the most current reliable evidence of net income before the court was the 1988 income-tax return signed by both parties

and submitted to Internal Revenue Service. Based on the 1988 income-tax return, respondent's monthly child support obligation of $1,592 falls below the statutory minimum support guidelines of section 505(a) of the Act, while the monthly sum of $3,025 requested by petitioner appears more in line with those guidelines. The trial court's use of the 1989 data and its methodology of calculating net income by a formula of averaging six years' weighted business profit was an abuse of discretion and must be set aside. We therefore reverse and remand for a redetermination of respondent's child support obligations based on reliable evidence of respondent's net income before the court at the time of trial.

■ It is within the sound discretion of the trial court to order payment of a health insurance premium (*In re Marriage of Piktel* (1980), 81 Ill. App. 3d 567, 401 N.E.2d 584; *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 511 N.E.2d 156); and there are few discernible guidelines regarding contingent medical expenses not covered by such insurance. However, in view of the disparate financial circumstances of the parties, the fact that respondent can affect the amount of contingent medical expense by his choice of a health insurance plan and uncovered expenses for the four minor children might well be substantial, and since we are remanding for recalculation of respondent's net income, we also reverse and remand for the trial court's further consideration the issue of allocation of the children's contingent medical expenses not covered by insurance.

Petitioner next contends that in awarding respondent 75% of the equity value of marital assets, the court failed to consider the statutory factors under section 503(d) of the Act, designed to place the parties in a position from which they can begin anew, and that she has been denied sufficient assets with which to start over. Section 503(d) requires marital property be divided in just proportions considering all relevant factors. (Ill. Rev. Stat. 1989, ch. 40, par. 503(d).) Just proportions means an equitable rather than an equal distribution, which will not be disturbed on appeal in the absence of a finding of abuse of discretion. (*In re Marriage of Stone* (1987), 155 Ill. App. 3d 62, 507 N.E.2d 900; *Wade*, 158 Ill. App. 3d 255, 511 N.E.2d 156.) The test for abuse of discretion in property distribution is "whether the trial court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted." *Stone*, 155 Ill. App. 3d at 75, 507 N.E.2d at 908.

■ Respondent's 75% share of the marital estate included the only income-producing property, the family funeral home business. An equitable distribution of marital property mandates consideration of the factors specified in section 503(d). The record does not show the trial court addressed the statutory factors in awarding respondent the bulk of the marital assets as well as the income-producing funeral home business—realistically appropriate since only respondent has the necessary expertise—with no offset payment. We therefore reverse and remand the issue of property division for consideration in light of the statutory factors under section 503(d), and the necessary recalculation of net income, which impacts the economic circumstances of the parties. When it is necessary to award large or income-producing assets to one spouse, the court can comport with the mandates of section 503(d) by authorizing offsetting payments (*In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006), as respondent offered to make here.

■■ ■ A maintenance award under section 504 of the Act requires a two-step analysis. The court is first to determine the propriety of an award under section 504(a) (Ill. Rev. Stat. 1989, ch. 40, par. 504(a)) and, if deemed appropriate, consideration must be given to the statutory factors under section 504(b) to determine the amount and duration of the award. (*In re Marriage of Emery* (1989), 179 Ill. App. 3d 744, 534 N.E.2d 1014.) The trial court properly determined a maintenance award was required; therefore, the statutory factors must be considered to determine the amount of that award. Those factors include the resources of the party seeking maintenance, including apportioned marital property; the standard of living established during the marriage and its duration; and the financial resources of the spouse from whom maintenance is sought to meet his needs while meeting those of his former spouse. A comparison of these statutory factors, as against the economic status of each of the parties, compels the conclusion a maintenance in gross award of $40,000, payable over 10 years at $333 a month, is inadequate to meet even petitioner's basic needs. In anticipation of the dissolution, the parties jointly purchased a residence for petitioner and the five children in order to allow respondent to retain the marital home adjacent to the funeral business. The maintenance award of $333 a month, together with petitioner's gross earnings of $380, will be insufficient to meet her monthly mortgage and utility expenses alone. Therefore, petitioner may be required to dispose of the asset intended by the parties as a permanent residence for petitioner and the children.

As indicated by the 1987 and 1988 income-tax returns, respondent has substantial income and future earning ability fostered by his award of the family funeral home business, sufficient to meet not only his needs but those of petitioner. Therefore, to achieve fairness between the parties, petitioner requires more substantial maintenance. Although not binding on the trial court on remand, we note the amount requested by petitioner, i.e., $1,000 a month for 12 years, appears modest given the income-producing ability and property of respondent, respondent's substantial income, and petitioner's current lack of property or earning ability to achieve a standard of living commensurate with that achieved during marriage from the profits of a family enterprise established and nurtured during the marriage partnership. Therefore, in light of the statutory factors of section 504(b) and this court's remand for recalculation of respondent's net income, we find that an award of $333.33 per month for 10 years to be an abuse of discretion and we reverse and remand for determination of a maintenance award for petitioner with consideration to the statutory provisions of section 504(b).

■ Petitioner next argues the trial court's order that respondent pay the $1,100 appraisal fee at the rate of $75 per month to each unpaid appraiser is, in essence, an order to pay $75 monthly on a zero balance as no appraisers are now unpaid. Petitioner paid the $1,100 appraisal fee with funds borrowed from her parents, who have not been reimbursed. While it appears the trial court intended that respondent be responsible for appraisal fees, the ambiguity of language as to manner of payment prevents us from giving this provision meaningful effect. We, therefore, remand for a reconsideration and specification as to the disposition of this $1,100 debt.

Petitioner's final argument is the court's order designating as maintenance the mortgage payments made by respondent in 1989, pursuant to the temporary order entered upon stipulation of the parties, amounts to an impermissible retroactive modification of the agreement made by the parties on temporary issues. Petitioner also argues the court lacked jurisdiction to modify the temporary order as neither party had filed a petition requesting modification pursuant to the provisions of section 501(d)(2) of the Act. Ill. Rev. Stat. 1989, ch. 40, par. 501(d)(2).

Respondent argues the temporary order of February 1988 was provisional only, was terminated and superseded by the final decree, and the court's undeniable jurisdiction over both the parties and the

subject matter provided discretionary authority to render this designation of payments previously made pursuant to a temporary order.

■ Section 501 provides for temporary relief in all proceedings under the Act. (Ill. Rev. Stat. 1989, ch. 40, par. 501.) Section 501(d) provides that a temporary order:

> "(1) does not prejudice the rights of the parties or the child which are to be adjudicated at subsequent hearings in the proceeding;
>
> (2) may be revoked or modified before final judgment, on a showing by affidavit and upon hearing; and
>
> (3) terminates when the final judgment is entered or when the petition for dissolution of marriage or legal separation or declaration of invalidity of marriage is dismissed." (Ill. Rev. Stat. 1989, ch. 40, par. 501(d).)

The historical and practice notes for section 501(d) indicate the purpose of the section is to encourage amicable temporary settlements without establishing precedent for later hearings as to need or ability to pay support. Temporary orders are not binding on the trial court and are terminated and superseded by the provisions of the final decree (*In re Marriage of Slavenas* (1985), 139 Ill. App. 3d 581, 487 N.E.2d 739; *Maroney v. Maroney* (1969), 109 Ill. App. 2d 162, 249 N.E.2d 871), and are effective until resolution of the prayers for dissolution (*In re Marriage of Zymali* (1981), 94 Ill. App. 3d 1145, 419 N.E.2d 487). Therefore, the issue of the characterization of the mortgage payments made during 1989 was properly before the court.

■ Furthermore, section 503(d)(11) of the Act directs the court to consider the tax consequences of the property division upon the economic circumstances of the parties. (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(11).) Tax consequences of all awards can be taken into consideration. (*In re Marriage of Murphy* (1983), 117 Ill. App. 3d 649, 453 N.E.2d 113.) We conclude that the trial court retained jurisdiction to designate the mortgage payments made under the auspices of the temporary order as maintenance in the judgment of dissolution.

■ However, as the record does not show the trial court's justification for this order in light of the factors for consideration of maintenance awards under section 504 (Ill. Rev. Stat. 1989, ch. 40, par. 504), we are puzzled as to the basis for its inclusion. In view of our reversal and remand on other related issues of property and support, we also remand this provision of the judgment of dissolution for consideration on the basis of the evidence of record.

To conclude, we find the circuit court erred in determining respondent's "net income," thereby requiring remand for redetermination of the level of support based on income figures shown in the parties' 1988 income-tax return. The order that the parties each pay half the children's medical expenses not covered by insurance is reversed and remanded for reconsideration. The property distribution, the award of maintenance in gross, and the appraisal fee issue are reversed and remanded with directions. The order designating as maintenance the mortgage payments made pursuant to the temporary order is remanded for reconsideration.

Reversed and remanded with directions.

GREEN and STEIGMANN, JJ., concur.