2019 IL App (2d) 181030-U
No. 2-18-1030
Order filed  December 19, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In Re* THE MARRIAGE OF KIMBERLY CONTI MICA, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 16-DV-773 |
| FRANK CONTI MICA, | ) ) ) | Honorable Mark R. Facchini, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Zenoff concurred in the judgment.

**ORDER**

¶ 1       *Held*: The trial court did not err in determining appellant's income for the purpose of calculating maintenance and child support. Appellant's contention that the trial court's formula for calculating maintenance and child support was inequitable is purely argumentative and not in harmony with supreme court rule 341(h)(7).

¶ 2       Respondent, Frank Conti Mica (Frank), appeals the trial court's entry of judgment for dissolution of marriage from petitioner, Kimberly Conti Mica (Kimberly).  Frank contends the trial court erred in its determination of his income for maintenance and child support purposes.  Frank also argues that the trial court's determination of maintenance and child support is inequitable

because it failed to account for years in which he earns less than his calculated annual average income. For the reasons that follow, we affirm the trial court's findings.

¶ 3                                    I. BACKGROUND

¶ 4     On September 26, 2016, petitioner, Kimberly Conti Mica, filed a petition for dissolution of marriage from respondent, Frank Conti Mica. The parties were married on October 12, 1990, and had four children. During the pendency of the dissolution proceedings, only their youngest child remained a minor while residing in the marital home. Relevant here, Kimberly's petition sought joint custody and control of the minor child, as well as reasonable maintenance and child support. Frank filed his answer to Kimberly's petition on November 4, 2016, as well as his own counter-petition for dissolution of marriage. Frank's petition sought to bar both parties from maintenance and allocate parental responsibilities and parenting time in accordance with the best interests of their minor child.

¶ 5     Trial was held over several dates between June 6 and September 18, 2018. At trial, Frank testified that he and Kimberly remained living in the marital home with all four of their children. Following the breakdown of the parties' marriage in 2016, Frank and Kimberly communicated through the children by relaying messages to one another or by texting via phone.

¶ 6     Frank has been self-employed as the owner of Conti Construction Consulting, Inc. since 2011. He described himself as "a nonself-performing general contractor, project manager, consultant, whatever." Frank is the lone employee of his company. He testified that he pays himself through "executive draws"[1] and personal expenses paid for by his business. He previously used a

---

[1] Based on the Frank's testimony and the evidence introduced at trial, executive draws describe money that Frank withdraws from Conti Construction and transfers to himself. These are not to be confused retained earnings as the bank statements introduced showed that Conti Construction's

payroll service to release paychecks when he needed money but stopped some time ago as "it was more of a hindrance than a help" to pay himself in that manner. All of the executive draws that Frank writes to himself from his business are deposited into his personal Chase checking account. To determine his income at the end of each year, Frank testified that he takes his business receipts and assembles the transactions. He then subtracts the business expenses and accounts for the executive draws.

¶ 7     Frank testified that his 2016 joint income tax return reflected his own personal business income as $243,225. He agreed that the amount he reported on his tax return does not reflect the total including the executive draws he takes from the business throughout the year. Frank's income tax returns showed the following business income amounts: 1) $258,713 in 2012; 2) $158,104 in 2013; 3) $274,965 in 2014; 4) $161,639 in 2015; 5) $243,225 in 2016; and 6) $297,384 in 2017.

¶ 8     Frank's bank statements for 2016 showed that he took draws totaling $273,000. In 2017, Frank took draws totaling $327,400. In 2018, through July, he had taken draws totaling $117,600.

¶ 9     Frank testified that one of the major customers of his business is MB Financial Bank. When he started doing work for MB Financial Bank, he was required to use union subcontractors to perform the jobs. At the beginning of 2017, MB Financial made the decision to use nonunion subcontractors, which reduced the amount of jobs Frank was offered as his relationships with subcontractors were primarily those of the union variety. Then, at the end of 2017, MB Financial started using union subcontractors again, allowing Frank to successfully bid on new jobs. Subsequently, MB Financial was taken over by Fifth Third Bank. Frank claimed that the jobs that he would normally bid for MB Financial stopped being offered.

_____

business checking account balance was $1,395.48 at the end of 2016, and $2,100.08 at the end of 2017.

¶ 10    Frank acknowledged that he has other long-term clients in addition to MB Financial. At the time of his testimony, Frank had been awarded jobs throughout 2018, had one job ongoing, two jobs starting that week, and anticipated being awarded several others by the end of the year. He said that he could not reliably estimate what his 2018 income would ultimately be.

¶ 11    Kim testified at trial that she has been employed by Motorola Solutions, Inc. since 2011. Relevant here, her starting salary in 2011 was approximately $40,000, and her current yearly gross income is $51,884.14.

¶ 12    On November 7, 2018, the trial court issued its incredibly thorough, 85-page decision and order. Regarding the issues raised in this appeal, the trial court found as follows:

> "The Court finds that Frank's income from Conti Construction is uncertain as to amount and cannot be expressed solely in an exact dollar amount. Therefore, the Court will average Frank's projected 2018 income with his 2012 through 2017 income to create a base amount of gross income for the purpose of maintenance. In addition, Frank shall pay a percentage of his executive draws and personal expenses paid by the business in excess of the base amount as and for his maintenance obligation to Kim.
>
> [The] Court finds Frank's gross annual income is $245,000 based on an average of his 2012 through 2018 projected income. Frank argues that his income for purposes of maintenance and child support should be imputed at $100,000 because business has slowed with one of his larger clients, MB Financial.
>
> According to Frank's testimony, over the last three to four years, Conti Construction has had a couple very good clients ***. According to Frank, MB began small four years ago, which would be in 2014. In 2014, Conti Construction reported gross income of $274,965. MB required union subcontractors. However, in early 2017, Conti

Construction stopped getting MB Financial work because they began using non-union subcontractors. During this time, Conti Construction continued to bid on MB Financial jobs, but Conti Construction was not awarded any. In 2017, Conti Construction reported gross income of $297,384 and Frank paid himself $345,069.47. At the end of 2017, MB began using union subcontractors again and invited Conti Construction to bid jobs. At some point, [Fifth Third] Bank took over MB Financial and bid invitations stopped. However, bid invitations started again in the summer of 2018 and Conti Construction has since been awarded two MB Financial jobs in July or August of 2018. Frank further testified that as of September 17, 2018, Conti Construction was currently doing a job *** which will award Conti Construction a $10,410 profit and starting two jobs next week would earn a $1,510 profit and a $5,950 profit. When asked what Frank believes he could reliably expect for ongoing income, Frank testified he has no idea.

Historically, Conti Construction has earned average profits over $240,000. Frank paid himself over $340,000 in 2017 and at least $273,000 in 2016. Frank asks the Court to ignore historical earnings, which are underreported, current earnings which are also underreported and on pace to exceed $200,000 given the three jobs referenced above, and impute income to Frank of $100,000 annually. Frank's argument further ignores that MB Financial is not Conti Construction's only good client. Even in years where work was slow with MB Financial, 2014 and 2017, Conti Construction still reported income in excess of $274,000. As such, the Court rejects Frank's argument to impute $100,000 of income for the purpose of setting his maintenance and child support obligation.

The Court finds that for purposes of calculating maintenance, Kim's gross annual income is $52,000.

· The maintenance calculation pursuant to section 504(b-1)(1)(A):

· Frank's gross annual income: 245,000 x .30 = $73,500

· Kim's gross annual income: $52,000 x .20 = $10,400

· Preliminary maintenance amount: $73,500 - $10,400 = $63,100

· Combine income of $297,000 x .40 = $118,800 maintenance cap.

· Kim's gross annual income plus preliminary maintenance = $115,100 < $118,800 maintenance cap. Therefore, the 40% maintenance cap does not apply.

· Therefore, Frank shall pay to Kim annual maintenance of $63,100 or $5,258.33 per month.

In addition to base monthly maintenance, Frank shall pay Kim 26% of any gross income, including executive draws and personal expenses paid by the business, in excess of $245,000 annually as maintenance (63,100/245,000 = 0.257). The 26% shall apply only to the first $345,069.47 of gross income annually, because, based on the evidence, $345,069.47 is the highest annual gross income Frank earned during the marriage. The parties shall conduct an annual maintenance true-up by May 15th of each year, beginning May 15, 2019.

The Court finds this is a long-term marriage, in excess of 25 years. The Court, in its discretion, awards Kim permanent maintenance. 750 ILCS 5/504(b-1)(1)(B).

As such, the Court awards Kim permanent maintenance of $63,100 ($5,258.33 per month) plus 26% of all gross annual income, including executive draws and personal expenses paid by the business, in excess of $245,000 and up to $345,069.47."

¶ 13    The trial court used $245,000 as Frank's average annual income in determining his child support obligation. Frank was ordered to pay Kim $1,194.38 per month in child support and an

additional 11% of his net annual income above $126,276. On November 13, 2018, the trial court entered its judgment for dissolution of marriage. Frank then filed this timely appeal.

¶ 14                                    II. ANALYSIS

¶ 15    Frank offers two contentions in this appeal. He contends that the trial court erred in determining his income for the purposes of maintenance and child support. He also contends that the formula used by the trial court to determine his payment of additional maintenance and child support if his gross income exceeds $245,000 annually is inequitable.

¶ 16    Frank first argues that by averaging his income from 2012 to 2018, the trial court erred in determining his income for the purposes of maintenance and child support as that determination does not fairly reflect his income at the time of trial.

¶ 17    A trial court's findings as to a party's net income and the award of child support are within its sound discretion and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Pratt,* 2014 IL App (1st) 130465, ¶ 22. Additionally, a trial court's award of maintenance will not be reversed absent an abuse of discretion. *In re Marriage of Smith*, 2012 IL App (2d) 110522, ¶ 46. A court abuses its discretion where no reasonable person would have taken the view adopted by the trial court. *Id*. Challenges to a trial court's factual findings regarding a maintenance determination will not be reversed unless they are against the manifest weight of the evidence. *Id.* Findings are against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence. *Id*.

¶ 18    Frank argues that the trial court erred in determining his income for maintenance and child support purposes. He breaks his argument into two sub-arguments. First, he argues that the evidence presented to the trial court illustrated a much lower income amount for the years 2017

and 2018. Second, he argues that the trial court's income-averaging approach to determine his income for maintenance and child support was inappropriate. We will address each argument in turn.

¶ 19    Frank testified that his income from January 2017 to September 2018 was $152,393, resulting in an annualized income of $91,435. He also testified that he had experienced a decrease in business during 2017 and 2018, resulting in his having to take jobs that produced smaller amounts of income. However, the evidence available at the time of trial, aside from just Frank's testimony, supports the trial court's determination of his income in those years.

¶ 20    The trial court found that Frank's income was generated from executive draws and personal expenses paid by his business. In 2017, Frank paid himself $327,400 in executive draws by check and cash withdrawals, and $22,785.68 of Frank's personal expenses were paid by Conti Construction. His total gross income in 2017 was determined to be $345,069.47. Despite his testimony that his year-to-date awarded work in 2018 was only $28,625 at the time of trial, the evidence showed that, as of August 23, 2018, Frank had paid himself $119,600 in executive draws. Conti Construction had paid $4,878 of Frank's personal expenses by that date. The trial court determined, based on those amounts, that Frank was on pace to gross $192,810.02 in 2018.

¶ 21    All of the amounts that the trial court used to determine Frank's gross income in 2017 and 2018 are supported by the record. There is no evidence to show that he earned substantially less in those years than in years prior, and certainly not substantially less than the trial court determined based on the evidence provided. Frank's argument on this issue seeks for this court to take his testimony on his income as superior to that of the trial court's meticulous findings to the contrary based on voluminous evidence supporting those determinations. We will not do so. The trial

court's determinations of Frank's income for the years 2017 and 2018 are well supported by the evidence produced at trial.

¶ 22    Moving on to Frank's second argument concerning errors in determining his income for maintenance and child support, he avers that it was inappropriate to consider his past income trends when his future income is uncertain. He attempts to find support for this argument through *In re Marriage of Schroeder*, 215 Ill. App. 3d 156 (1991).

¶ 23    In *Schroeder*, the trial court determined respondent's income for purposes of his child support obligation by averaging the earnings of his funeral home proprietorship for the prior six years (1984 through 1989), represented by income tax returns and a 1989 projected-income statement prepared by respondent's counsel. *Schroeder*, 215 Ill. App. 3d at 158. The trial court found respondent's average income to be $47,767 and assessed respondent's monthly child support obligation at $1,592 for his minor children per the contemporary statutory guidelines. *Id.* at 159.

¶ 24    The appellate court agreed with respondent that six-year old data could not reflect the then current circumstances of the parties. *Id*. at 161. The court stated that "[w]hile it is appropriate to consider prior years' documentation to ascertain income trends when future income is uncertain, we conclude deviations from reliable current income data require a compelling showing of a definitive pattern of economic reversals." *Id*. As respondent's income from business profits had substantially increased from year to year, and his 1989 projected-income statement raised factual concerns to the court leaving the data unreliable, the most reliable evidence of respondent's income was the 1988 income tax return. *Id*. at 161-62

¶ 25    Turning to the facts of the present appeal, it strikes this court as somewhat odd that Frank would want us to reverse the trial court's income averaging approach to determine his fluctuating income in favor of the method implemented in *Schroeder*. Like that case, Frank's most recent

year's income (2018) was projected by the evidence available including his executive draws and paid personal expenses up to August 23, 2018. Frank certainly takes issue with that approach and believes his 2018 income to be substantially less due to the alleged downturns in his business volume. If we were to say that the contested nature of that year's income leads us to find the evidence introduced as unreliable, per *Schroeder* we would take the last year of income supported by the evidence introduced, or 2017. That would necessitate a reversal of the trial court's determination of Frank's income at $245,000 for maintenance and child support. We would then remand the matter to the trial court to calculate Frank's income at the more reliable 2017 income amount, or $345,069.47. But fortunately for Frank, the trial court's income-averaging approach to calculating his income was entirely reasonable.

¶ 26    As stated, a trial court's determination of income for maintenance and child support purposes is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. See *supra* ¶ 17. In situations where income fluctuates from year to year, income averaging is an approved method to apply in determining current net income for the purpose of establishing support obligations. *In re Marriage of Garrett*, 336 Ill. App. 3d 1018, 1025 (2003). Income averaging may be applied in any case where it is appropriate, and there does not need to be wild fluctuation before averaging may be applied. *Garrett*, 336 Ill. App. 3d at 1025. Therefore, the trial court's determination of Frank's income for maintenance and child support, calculated by averaging his prior years' income, was not an abuse of discretion and is wholly supported by the evidence in this case.

¶ 27    Finally, we come to Frank's last contention. Frank contends that the trial court's calculation of maintenance and child support is inequitable. But his argument is unsupported by any citations to relevant authority or any discernible argument aside from the proposition that Frank's own

maintenance and child support calculations would be better than what the trial court determined. He would like implemented what he believes would be a more advantageous support obligation. He would prefer that his support obligations be "recalculated to reflect a base income *** of $100,000 and set additional support on amounts earned in excess thereof." The gist of Frank's purportedly more equitable scheme seems to be its eschewing of the average income calculation in favor a lesser amount as the trial court's method has no safe guard for him in years in which his income is lower than $245,000. We can certainly understand Frank's position would undoubtedly be of great benefit to him if his income for purposes of his support obligations were drastically reduced. It may even incentive him to earn or report a lower income to keep his support obligations to his liking. However, his arguments on this topic are waived.

¶ 28    Supreme Court Rule 341(h)(7) reads as follows concerning what the appellant's brief must contain:

> "Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. Evidence shall not be copied at length, but reference shall be made to the pages of the record on appeal where evidence may be found. Citation of numerous authorities in support of the same point is not favored. Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill S. Ct. R. 341(h)(7) (West 2018).

As Frank's argument on this issue is not in harmony with the aforementioned rule, and is merely presented as his preferred approach in income calculation, this argument is waived.

¶ 29                          CONCLUSION

¶ 30    The judgment of the circuit court of McHenry County is affirmed.

¶ 31    Affirmed.