*In re* MARRIAGE OF DEBRA ANN FREESEN, n/k/a Debra Ann Grote, Petitioner-Appellant and Cross-Appellee, *and* OSCAR ROBERT FREESEN III, Respondent-Appellee and Cross-Appellant.

Fourth District    No. 4—94—1023

Argued July 18, 1995.—Opinion filed September 15, 1995.—Rehearing denied October 17, 1995.

98

David E. Leefers and Kenneth D. Dobson (argued), both of Jacksonville, for appellant.

Larry D. Kuster (argued) and Maria M. Gonzalez, both of Rammelkamp, Bradney, Dahman, Kuster, Keaton & Fritsche, of Jacksonville, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Petitioner Debra Grote, formerly Debra Freesen (Debra) appeals from an order of the circuit court of Scott County granting her petition for increased child support payments and denying her request for attorney fees. Respondent Oscar Robert Freesen (O.R.) cross-appeals the court's order on reconsideration denying a reduction in child support payments upon graduation of the parties' eldest child from high school in June 1995.

The parties were married in 1971 and divorced in September 1986. Debra was awarded custody of the parties' minor children in the divorce judgment, but the children were to reside with O.R. for six continuous months of the year. He was to pay $1,250 per month in child support payments and, in addition, pay all medical expenses and any special-education residential and summer schools, or other camps, for the children. O.R. was to pay $1,916.97 maintenance to Debra for 72 consecutive months, regardless of her remarriage. He was also to pay tuition, fees, and books for Debra at a college or university from January 1, 1987, to December 31, 1992. A qualified domestic relations order was entered entitling Debra to a 50% share of O.R.'s pension accumulated during their marriage.

In 1992, the parties agreed the children would live with Debra during the school year and with O.R. during the summer. Debra filed a first-amended petition to modify child support payments on November 22, 1993. In addition to requesting increased child support payments, the petition asked that any increase be made retroactive to September 1988 and that the court award Debra attorney fees on the petition. Hearings on the petition were held on five separate occasions from November 1993 to April 1994.

At the November 22, 1993, hearing on the petition, O.R. testified that the parties have three minor children, Oscar Robert IV (known

as "Boomer"), age 16; Willard (known as "Willy"), age 14; and Mariah, age 12. An older daughter, Sunset Jennifer, died in 1989. He is a vice-president of Freesen, Inc. (Freesen), a road construction contractor. He remarried in March 1991. Under the divorce decree, he stopped paying maintenance to Debra in September 1992. O.R.'s salary is approximately $52,000 per year, and bonuses he receives account for the difference between this amount and his total income each year. He received salary and bonuses of $470,899 in 1987, $212,364 in 1988, $502,556 in 1989, $347,015 in 1990, and $212,800 in 1991. His total income for 1992 as shown on his Federal income tax return was $341,926. As of November 22, 1993, his compensation from Freesen totaled $175,002. In addition to this compensation from Freesen, O.R. received interest and dividend income. He testified regarding his involvement in several business enterprises, one of which was ORF, Inc. (ORF), a closely held corporation with three shareholders—O.R., his father, and his brother. ORF was a limited partner in Sixth Street Developers, which owned 125 acres of commercial property in Springfield. Attempts were being made to develop this property into lots and sell them; to date, the project has had limited success. Sixth Street Developers has a heavy debt load because of this venture, and O.R. testified that ORF is responsible for 40% of this debt. He is personally liable for one-third of this 40% share, and he had borrowed funds to pay his part of the debt. He also incurred several loans in late 1993 and early 1994 for payment of income taxes, legal fees, purchase of a truck, and a farm he is purchasing with his father. He has a home worth approximately $125,000, and the value of his Freesen stock is almost $542,000.

The bonuses O.R. receives vary from year to year, depending upon Freesen's profits. In 1993, he received a bonus of $125,000 for fiscal year 1992. Freesen's board of directors decided not to pay a bonus for 1993 because adverse weather affected progress of work projects. O.R. testified that although he is a member of the board of directors, he did not participate in that decision. O.R. also testified that he must declare $50,000 in income from ORF on his 1993 income tax return, which is his share of profit from that corporation. However, he will not actually receive this money; it was retained by ORF to pay off corporate debt.

O.R.'s affidavit of income and expenses listed total monthly living expenses of $3,699 for O.R., his current wife, and the three children. He testified this figure is exact, not merely an estimate. He also stated that over the years he has purchased extra items for the children such as cars, motorbikes, and four-wheelers. His wife testified that she buys the children name-brand clothing, but tries to take advantage of sales.

The parties differed in their opinions regarding the standard of living enjoyed by the children during the marriage. Debra, a homemaker, testified that the family lived in a $560,000 house. They took vacations to Disney World and a dude ranch in Arizona, and took skiing vacations to Utah and New Mexico. In his testimony, O.R. added facts indicating that these vacations were not luxurious and that his parents contributed money for some of the trips. Debra testified she and O.R. indulged the children; she shopped at the best stores, and the children never lacked for anything they wanted.

Debra testified that expenses for the children had increased significantly since 1986. For example, food expense increased from $800 per month to $1,350 and clothing expense increased from $500 per month to $1,300. Debra buys the children very nice, expensive clothing; it is what they want and are accustomed to wearing. She also buys them expensive birthday and Christmas gifts, spending $500 per month. She gives the children a total of $350 per month in spending money. School lunch money ($5 per day for each child) is $350 per month. She spends $900 per month for recreation, social functions, entertainment, and travel expenses (most of which is for vacations), as compared to $400 in 1986. Debra's financial affidavit listed total 1994 monthly living expenses for herself and the children at $7,454. She testified she had been unable to maintain the children's current standard of living on her own income and O.R.'s child support payments. Since 1990, she had borrowed funds from her current husband in excess of $55,000 for living expenses, income taxes, and attorney fees. These loans were not reduced to writing, and he was not charging interest. She had repaid approximately $30,000 of this amount from a distribution she received in a settlement of a wrongful death suit filed as a result of her oldest daughter's death. Debra had also incurred debts to three banks to pay living expenses. In 1992, she received $32,000 from her interest in the sale of the parties' marital home. She used this money for vacation, Christmas, purchase of furniture, and living expenses. Debra maintained she had no cash assets other than an individual retirement account.

Evidence was adduced as to Debra's attorney fees. Both her attorneys testified to the number of hours expended and hourly rates charged. No documentary evidence was presented.

During his testimony in April 1994, O.R. identified a pay stub reflecting his gross salary that month in the amount of $4,582. With deductions for Federal and State withholding, FICA (Federal Insurance Contributions Act), and a discretionary $200 deduction to cover uninsured medical expenses, his net monthly pay was $3,221.65. He testified this would be his monthly salary for the remainder of the

year. O.R. testified that prior to the divorce he felt the children's needs were being met, but now they have much more than they need. He said he and Debra do not communicate well and have sometimes bought the children duplicate items.

On August 26, 1994, the trial court entered an order finding (1) there had been a substantial change in circumstances due to the death of one child, remarriage of both parties, termination of maintenance, increased age of the three living children, and increased costs of living; (2) O.R. is able to pay an increased amount of child support; (3) the children did not enjoy an extravagant life-style during the marriage and over the years O.R. had provided substantial extra money to the children for clothing, recreational equipment, transportation, and medical expenses; (4) O.R. and Debra have differing views of the life-style best suited for the children and the amount of money to be spent for their needs; (5) O.R.'s net income for 1993 was $103,177 (after deducting Federal and State income tax, social security, medicare taxes, and $50,000 passive income from ORF); (6) 32% of this amount is $33,016.64 per year, or $2,751 per month; (7) this amount exceeds the reasonable and necessary needs of the children; (8) O.R. has demonstrated over the years that he will provide additional funds to the children for extra items the children may desire over and above their reasonable and necessary needs for food, education, clothing, and shelter; and (9) each party is able to pay his or her own attorney fees. The court ordered O.R. to pay $2,000 per month in child support payments, retroactive to November 20, 1993. On June 20, 1995 (the date of Boomer's graduation from high school), child support payments were to abate to $1,550 per month for the two remaining minor children. The court ordered each party to pay his and her own attorney fees.

Debra filed a post-trial motion, asking the court to reconsider its order by (1) averaging O.R.'s income over the seven-year period since the divorce and awarding child support payments of 32% of that amount; (2) including the $50,000 passive income in O.R.'s net income for 1993; (3) ordering O.R. to pay her attorney fees; (4) making the child support payments retroactive to September 1992; and (5) eliminating the automatic abatement provision.

On November 9, 1994, the trial court entered an order denying Debra's motion to reconsider, except that the court struck that portion of its original order providing for automatic abatement of child support in June 1995. The court found it improper to order an abatement of child support payments at a future date, when circumstances of the parties at that time are unknown.

## I. CALCULATION OF NET INCOME

Debra first argues on appeal that the trial court erred in its calculation of O.R.'s net income for child support purposes under section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505 (West 1992)). She believes that because O.R.'s income varied from year to year, the trial court should have considered his income from prior years to arrive at his true prospective income.

■ Findings of a trial court as to net income and the awarding of child support are within the discretion of the trial court and will not be disturbed on review absent an abuse of that discretion. (*In re Marriage of Scafuri* (1990), 203 Ill. App. 3d 385, 391, 561 N.E.2d 402, 405.) This court's decision in *In re Marriage of Carpel* (1992), 232 Ill. App. 3d 806, 597 N.E.2d 847, is of particular relevance to this case. In *Carpel*, the noncustodial parent was a self-employed personal injury attorney. His income varied significantly from year to year. Over a five-year period, his income ranged from a low of $3,400 for a 10-month period in 1990 to a high of $328,000 in 1989. On the issue of child support, this court held that in cases where a support-paying parent's income fluctuates significantly, the trial court should consider prior income in determining the parent's prospective income. Our court directed the trial court on remand to consider the last three years of the noncustodial parent's income in determining a net income for child support purposes. *Carpel*, 232 Ill. App. 3d at 819, 597 N.E.2d at 857.

In 1991, O.R. was paid wages and bonus of $212,800. His total income on the 1991 Federal income tax return was $236,180. We note that in that year he overpaid his Federal income tax by $15,495. This amount should be added back to his gross income when calculating his net income for that year. For 1992, O.R. received wages and bonus of $302,606. His total income on his 1992 Federal income tax return was $341,926. Complete figures for 1993 were not available to the trial court. As of late November 1993, O.R. had received gross wages and bonus of $175,002. Income need not fluctuate wildly before it is appropriate for the trial court to consider prior years of income in determining prospective income. We also note that there is no iron-clad rule requiring a trial court to consider only the last three years of income in arriving at net income for child support purposes. At least the three prior years should be used to obtain an accurate income picture. Beyond that, however, it must be left to the discretion of the trial court, as facts will vary in each case. While a court should not base net income findings upon the mere possibility of future financial resources, neither should it rely upon outdated infor-

mation which no longer reflects prospective income. (*Carpel*, 232 Ill. App. 3d at 819, 597 N.E.2d at 857; see *In re Marriage of Schroeder* (1991), 215 Ill. App. 3d 156, 161, 574 N.E.2d 834, 837 (where this court stated that six-year-old income data cannot reflect current circumstances).) In most cases, going back beyond the current year in arriving at a net income figure will be confined largely to cases where the support-paying parent is self-employed. However, income averaging is not to be confined solely to such cases; it may be used in any case where appropriate. Here, for instance, even though O.R. is not self-employed, his income varied through the years by reason of the presence or absence of large bonuses from Freesen.

■ This is the type of case which calls for income averaging, and we hold it was error for the trial court to limit its consideration to income for one year. On remand, the trial court should consider an average of at least the last three years of gross income as reflected in O.R.'s wage statements and his income tax returns and subtract deductions allowed under section 505(a)(3) of the Act to arrive at net income for each year. 750 ILCS 5/505(a)(3) (West 1992).

In a related argument, Debra contends the trial court erred in excluding from O.R.'s net income the passive income of $50,000 from ORF. We disagree and conclude the court did not abuse its discretion in excluding this amount. In *In re Marriage of Harmon* (1991), 210 Ill. App. 3d 92, 95-96, 568 N.E.2d 948, 950, the appellate court stated that where unrefuted testimony indicates a party did not actually receive the passive income, even if it is reported on income tax returns, it is not error to refuse to consider such amounts in calculating net income for child support purposes. Here, O.R. testified that he did not actually receive the income, as it was retained by ORF to reduce corporate debt. No evidence disputing this testimony was presented to the trial court.

## II. DEVIATION FROM GUIDELINES

■ Debra next argues that the trial court erred in deviating below the statutory guidelines in setting increased child support payments. Section 505 of the Act provides that the established percentage guidelines under that section are to be applied in each case unless the trial court finds reason to deviate from the guidelines. The section then sets forth the following factors to be considered by the trial court in making this determination: (1) financial resources of the child, (2) financial resources and needs of the custodial parent, (3) standard of living the child would have enjoyed had the marriage not been dissolved, (4) physical and emotional condition of the child and educational needs, and (5) financial resources and needs of the

noncustodial parent. If the court deviates from the guidelines, it is to make "express findings" as to its reasons for doing so. 750 ILCS 5/505(a)(2) (West 1992).

■ We conclude the trial court erred in deviating from the statutory guidelines. Although in light of our holding that the trial court erred in determining O.R.'s net income, we ordinarily would not reach this argument, we choose to consider it since the issue may come up again on remand.

Section 505(a) of the Act has been held to create a rebuttable presumption that a specified percentage of a noncustodial parent's income represents an appropriate child support award. (See *In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 1045, 492 N.E.2d 622, 629.) In addition, when determining whether to deviate from the guidelines, consideration of the factors set forth in section 505 of the Act is mandatory, not directory. (*Parks v. Romans* (1989), 187 Ill. App. 3d 445, 448, 543 N.E.2d 277, 279.) The trial court in this case heard a wealth of evidence on all the statutory factors, but it considered an improper factor when deviating from the guidelines. In two separate findings in its August 1994 order, the trial court noted that over the years O.R. had provided substantial amounts of extra money to the children for the purchase of clothing, recreational equipment, and other expenses. The court also found that O.R. had demonstrated he would provide extra funds for items desired by the children over and above their reasonable and necessary needs for food, clothing, shelter and education. There are two errors in this reasoning. First, it is well settled that child support is not to be based solely upon the shown needs of the child. The Supreme Court of Illinois has stated that to restrict a child support award only to shown needs of the child would read out of the statute the factor of the standard of living the child would have enjoyed had the marriage not been dissolved. (See *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 297, 483 N.E.2d 1229, 1234.) This court has also rejected a strictly need-based analysis in setting child support. (See, *e.g., People ex rel. Graham v. Adams* (1993), 239 Ill. App. 3d 643, 647, 608 N.E.2d 614, 617; *In re Marriage of Lee* (1993), 246 Ill. App. 3d 628, 643, 615 N.E.2d 1314, 1326, *appeal denied* (1993), 153 Ill. 2d 560, 624 N.E.2d 808; *In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 261, 547 N.E.2d 590, 596.) Moreover, this court has held that in modifying a child support award the court may increase the award based upon the ability of the noncustodial parent to pay, regardless of the increase in the needs of the child. (See *In re Marriage of Lambdin* (1993), 245 Ill. App. 3d 797, 806, 613 N.E.2d 1381, 1389; *Wilson v. Wilson* (1988), 166 Ill. App. 3d 1035, 1038, 520 N.E.2d 1230, 1232.) It appears from its

findings that the trial court in this case considered only the reasonable needs of the children in setting the child support award. This was in contravention of the statute and established case law.

The second flaw in the trial court's analysis of its child support award is its consideration of O.R.'s gratuities in deviating below the guidelines. In fact, regardless of any deviation by the court from the guidelines, it is inappropriate to consider this factor in setting child support awards. By their very nature, O.R.'s gratuities may be given or withheld by him at any time at his unfettered discretion. Any consideration of such gratuities in setting the child support award was improper.

■ Debra also argues the trial court failed to make express findings to support its determination to deviate below the statutory guidelines, as required by section 505 of the Act. However, we need not consider this issue. Debra raised the argument for the first time in her reply brief, thus waiving it under the provisions of Supreme Court Rule 341(e)(7) (155 Ill. 2d R. 341(e)(7)).

## III. RETROACTIVITY OF INCREASED AWARD

■ Debra also argues the trial court erred in refusing to make the child support award retroactive to September 1992, the date when her maintenance payments ceased. Section 510(a) of the Act (750 ILCS 5/510(a) (West 1992)) provides that the court may modify child support payments only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification. Once a petition has been filed, a child support award may be made retroactive to the date of filing of the petition. This decision is purely within the discretion of the trial court. (*In re Marriage of Heil* (1992), 233 Ill. App. 3d 888, 895, 599 N.E.2d 168, 173.) There is no indication in the record that notice of hearing on Debra's petition for modification was served on O.R. in September 1992 and we note Debra does not make such an argument in her brief. The trial court's decision on this issue was not improper.

## IV. ATTORNEY FEES

■ Debra next argues that the trial court erred in determining that she was able to pay her own attorney fees. We note that Debra has failed to cite any legal authority supporting her argument and, thus, has waived this issue for our consideration under Supreme Court Rule 341(e)(7) (155 Ill. 2d R. 341(e)(7)). Regardless, we would find no error in the trial court's decision. A party seeking an award

of attorney fees in a dissolution case must show his or her inability to pay and the ability of the other party to pay the fees. An award of attorney fees lies within the sound discretion of the trial court, and its decision will not be disturbed on review absent an abuse of that discretion. (*In re Marriage of Phillips* (1993), 244 Ill. App. 3d 577, 595-96, 615 N.E.2d 1165, 1178-79.) The sole evidence of attorney fees incurred by Debra consisted of testimony by her two attorneys as to the number of hours spent on her behalf, multiplied by their hourly rates. This evidence was insufficient to support an award of attorney fees. In *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 983-84, 518 N.E.2d 424, 427-28, the court stated that the party seeking an award of attorney fees bears the burden of presenting sufficient evidence establishing that the fees are reasonable. Whether they are reasonable is left to the discretion of the trial court. More must be presented than merely a compilation of hours multiplied by a fixed hourly rate, or bills issued to the client. A request for fees must be supported by information specifying the services performed, by whom performed, time expended thereon, and hourly rate charged. For this purpose, it is incumbent upon a party seeking fees to present detailed records containing these facts.

## V. ABATEMENT OF CHILD SUPPORT

■ O.R. cross-appeals, arguing the trial court erred in reconsidering its original order providing for abatement of child support payments upon Boomer's graduation from high school on June 20, 1995. Evidence indicated that Boomer reached his majority in April 1995. In light of the date of this decision, and our remand of this case for redetermination of O.R.'s net income and setting of a proper child support award, we would be justified in not considering this issue. However, we note that Willy is now 17 years old. Because this issue may again come before the trial court on remand, we elect to address it.

O.R. argues the trial court believed it was without authority to reduce his child support payments upon Boomer's graduation from high school. As we have indicated, modification of child support payments rests within the sound discretion of the trial court, and its decision will not be disturbed on appeal absent an abuse of that discretion. (*Scafuri*, 203 Ill. App. 3d at 391, 561 N.E.2d at 405; *In re Marriage of Mitteer* (1993), 241 Ill. App. 3d 217, 224, 608 N.E.2d 607, 611.) A reading of the trial court's order on reconsideration reveals it merely believed that it was improper to prejudge the issue of abatement prior to Boomer's graduation. This is an exercise of discretion. The trial court was not required to provide for a reduction of child

support payments months in advance. O.R. argues that in its original order providing for abatement of support, the trial court must have found that $450 of the $2,000 in monthly child support was attributable to Boomer. However, the trial court made no findings concerning this issue and the basis for its reasoning is unknown. In any event, the court was within its discretion to reconsider its decision on this issue.

For the reasons stated, the judgment of the trial court with regard to payment of attorney fees, retroactivity of the modified child support award, and reconsideration of abatement of child support payments is affirmed; the determination as to the amount of child support payments is reversed and the cause remanded.

Affirmed in part; reversed in part and remanded.

KNECHT, P.J., and STEIGMANN, J., concur.