NO. 4-95-0813 

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

In Re:  the Marriage of                 )    Appeal from

MARYSE CHARLES,                         )    Circuit Court of 

          Petitioner-Appellant,         )    Macon County

          and                           )    No. 92D153

FRANTZ CHARLES,                         )    

          Respondent-Appellee.          )    Honorable

                                        )    Scott B. Diamond,

                                        )    Judge Presiding.

_________________________________________________________________

          JUSTICE McCULLOUGH delivered the opinion of the court:

          In March 1994, the trial court entered a judgment

dissolving the 19-year marriage of petitioner, Maryse Charles, and

respondent, Frantz Charles, and reserving all other issues.  In

December 1994, the court entered a supplemental judgment, allocat-

ing marital assets and debts and ordering Frantz to pay $2,250 per

month in child support.  In September 1995, the court entered a

judgment which, in relevant part, awarded Maryse $2,750 per month

in maintenance, reviewable after three years.

          Maryse appeals, arguing that the trial court erred (1) in

allocating marital assets and debts because the court (a) did not

consider Frantz's dissipation of marital assets, (b) did not

consider the parties' grossly disparate earning abilities; and (c)

ordered that liquidated marital assets be used to pay Frantz's 1994

tax liability; (2) by ordering that liquidated marital assets be

used to satisfy Frantz's attorney fees; (3) in awarding child

support that was substantially below the statutory guidelines; and

(4) in awarding maintenance that is inadequate to enable Maryse to

enjoy a lifestyle consistent with the lifestyle she had enjoyed

during the marriage.  We reverse and remand.

          Preliminarily, we point out that Frantz did not file a

brief on appeal.  In First Capitol Mortgage Corp. v. Talandis

Construction Corp., 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495

(1976), the supreme court held that where the record is simple and

the claimed errors are such that the reviewing court can easily

decide them without the aid of the appellee's brief, the court

should decide the merits of the appeal.  However, a reviewing court

should not be compelled to serve as appellee's advocate.  Where the

issues on appeal cannot be easily evaluated, the appellant's brief

makes a prima facie showing of reversible error, and the record

supports the allegations of error, a reviewing court may reverse. 

Talandis, 63 Ill. 2d at 133, 345 N.E.2d at 495.

          Deference should be given to the work of the trial judge,

and in the interest of judicial economy we are reluctant to reverse

without giving consideration to the merits.  See Daley v. Jack's

Tivoli Liquor Lounge, Inc., 118 Ill. App. 2d 264, 273-75, 254

N.E.2d 814, 818-19 (1969) (cited as instructive in Talandis, 63

Ill. 2d at 131, 345 N.E.2d at 494).  The record in this case is not

so complicated as to prevent this court from reviewing the issues

on the merits.  We will consider the merits of the appeal.

          Only those facts necessary to an understanding of this

disposition will be discussed.  As to the issues raised on appeal,

the standard of review is whether the trial court's findings of

fact are against the manifest weight of the evidence or whether the

property distribution or awards of maintenance, child support, and

attorney fees amounted to an abuse of discretion.  In re Marriage

of Swanson, 275 Ill. App. 3d 519, 528, 656 N.E.2d 215, 222 (1995)

(property distribution); In re Marriage of Frey, 258 Ill. App. 3d

442, 448, 630 N.E.2d 466, 471 (1994) (property distribution

including dissipation of assets); In re Marriage of Parker, 252

Ill. App. 3d 1015, 1022, 625 N.E.2d 237, 242 (1993) (attorney

fees); In re Marriage of Harlow, 251 Ill. App. 3d 152, 156, 621

N.E.2d 929, 933 (1993) (maintenance); In re Marriage of Tietz, 238

Ill. App. 3d 965, 978, 605 N.E.2d 670, 680 (1992) (child support).

          The first issue is whether the trial court's allocation

of marital assets and debts was an abuse of discretion because the

trial court did not appropriately consider Frantz's dissipation of

marital assets.  Maryse filed a petition for legal separation on

June 4, 1991.  An order was entered on July 29, 1991, granting her

temporary custody, child support, maintenance, and use and

possession of the marital residence and a 1990 Audi.  She filed a

petition for dissolution of marriage on March 6, 1992.  At that

time, the proceedings were consolidated.  

          The trial court first ordered that marital debts be

satisfied from the marital estate.  These debts ($344,476.42 plus

any penalty from the early withdrawal of tax-sheltered investments)

included several years of tax liabilities, Frantz's 1994 estimated

Federal income tax, and payments of attorney fees for both parties. 

After debt satisfaction, the trial court awarded Maryse $49,000 in

personal property she had taken to Florida.  Frantz was awarded two

homes and the debts thereon, a 1991 Nissan Pathfinder and the debt

thereon, and his medical practice.  The trial court's orders

contain no findings as to the values of the assets awarded to

Frantz.  

          Maryse's first issue concerns dissipation of marital

assets by Frantz.  Dissipation is a factor the trial court should

consider in allocating marital property.  In re Marriage of Lee,

246 Ill. App. 3d 628, 633, 615 N.E.2d 1314, 1319 (1993).  Dissipa-

tion refers to the "'use of marital property for the sole benefit

of one of the spouses for a purpose unrelated to the marriage at a

time that the marriage is undergoing an irreconcilable breakdown.'" 

In re Marriage of O'Neill, 138 Ill. 2d 487, 497, 563 N.E.2d 494,

498-99 (1990), quoting In re Marriage of Petrovich, 154 Ill. App.

3d 881, 886, 507 N.E.2d 207, 210 (1987).  Whether a given course of

conduct constitutes dissipation within the meaning of the Illinois

Marriage and Dissolution of Marriage Act (Act) (750 ILCS

5/503(d)(2) (West 1992)) depends upon the facts of the particular

case.  Lee, 246 Ill. App. 3d at 633, 615 N.E.2d at 1319.  The

spouse charged with dissipation has the burden of proving, by clear

and convincing evidence, how the marital funds were spent.  Based

on the credibility of the witnesses, the trial court determines

whether the funds were spent for legitimate family expenses which

were necessary and appropriate.  Tietz, 238 Ill. App. 3d at 983-84,

605 N.E.2d at 683.

          The orders of the trial court in this case do not address

the question of dissipation of assets.  No finding was made

regarding whether there was dissipation.  Nor do the trial court's

orders indicate when the marriage began undergoing an irreconcil-

able breakdown.  Maryse argues this began when Frantz began his

extramarital relationship.  The record indicates that Frantz gave

money to and purchased trips and other items for his mistress

beginning in September 1990 and continuing for some time during

these proceedings.  This was acknowledged by Frantz.  There was

testimony from certified public accountant Robert Disbrow and from

Frantz from which the trial court could find that Frantz spent

several tens of thousands of dollars on this woman, including

credit card payments, cash, a house down payment, and mortgage pay-

ments.  He was also paying her child support for their child. 

Maryse points to evidence showing Frantz spent in excess of

$116,000 with respect to the extramarital relationship.  Frantz

purchased a second home for himself after the parties separated. 

For this second home, he made a downpayment of $11,000 and secured

a $175,000 mortgage.  From April 1993 through November 1993, he

made monthly mortgage payments of $1,500.  He also purchased

furniture for himself.  While Maryse testified that Frantz had

removed several valuable household items from the marital home when

the parties initially separated, there was no evidence of the value

of these assets.  Nor was there evidence of the value of the

personal property Maryse sold to pay for her move to Florida.  

          In In re Marriage of Hagshenas, 234 Ill. App. 3d 178,

197, 600 N.E.2d 437, 451 (1992), the court addressed the issue of

dissipation through excessive expenditures for living expenses, and

wrote the following:

          "It is entirely within the realm of possibil-

          ity that one spouse's use of marital funds for

          his or her own living expenses at a time when

          the marriage is undergoing an irreconcilable

          breakdown could be shown to be so selfish and

          excessive and improper as to constitute an

          outright waste of marital funds."

On the record before us, there was dissipation of marital assets by

Frantz.  Furthermore, between May 1991 and April 1993, the evidence

shows Frantz liquidated investments.  Maryse argues this amount

exceeds $210,000.  As the party charged with dissipation, Frantz

had the burden to establish by clear and convincing evidence the

disposition of these funds.  The failure of the trial court to

address the question of dissipation amounted to an abuse of

discretion requiring reversal.

          The record also supports a finding that Frantz dissipated

marital funds when he failed to satisfy the 1991 tax debt, thereby

incurring over $26,000 interest and penalties.  Although the 1991

Federal income tax return was filed jointly, Maryse testified that

Frantz controlled the family finances and she did not see the 1991

tax return before Frantz filed it.  Frantz presented no evidence

that Maryse had seen or signed the return, nor did he offer a

reason for failing to satisfy the tax debt.  In addition, the trial

court could find that Frantz dissipated marital funds relating to

the filing of income tax returns for 1992 and 1993.

          Upon remand, the trial court should reconsider the 

distribution of marital assets and liabilities in light of the

dissipation of marital assets by Frantz.  Because this judgment is

reversed, the remaining issues will be discussed to provide further

guidance to the trial court on remand.  

          When Maryse and Frantz married in 1974, Maryse abandoned

her medical studies.  Although she subsequently acquired a

bachelor's degree in chemistry in 1993, she had not work outside

the home for a number of years and remained the primary caregiver

for their two children.  During their marriage, Frantz established

a profitable medical practice.  During the first six months of

1995, his net business income was $116,577.  There is evidence

Frantz has substantial future earning ability.  The trial court

committed an abuse of discretion by awarding Frantz, after debt

satisfaction, the bulk of the marital assets.  It is likely Frantz

will be awarded the medical practice.  The trial court should award

Maryse other marital property as an offset or order Frantz to make

payments to her.  See Tietz, 238 Ill. App. 3d at 969-70, 605 N.E.2d

at 674; In re Marriage of Scafuri, 203 Ill. App. 3d 385, 389, 561

N.E.2d 402, 405 (1990).

          At the August 21, 1995, hearing, the trial judge

explained that it appeared to him the parties had more debts than

assets, and although the medical practice was a high income

producer, he was going to consider the debt-asset relationship in

the award of maintenance.  Courts have observed that, after a

dissolution of marriage, there may not be sufficient funds to

maintain both parties in the standard of living they previously

enjoyed.  However, one party should not be allowed to continue in

that standard of living while the other party is forced to

substantially reduce her standard of living.  This principle

applies whether the court is considering property distribution,

dissipation of assets, or maintenance.

          In reconsidering the distribution of marital property on

remand, the trial court must also consider the parties' grossly

disparate earning abilities in determining an equitable distribu-

tion.  Section 503(d) of the Act sets forth the factors to be used

by the trial court to divide the marital property in just propor-

tions.  750 ILCS 5/503(d) (West 1992).  When it is necessary to

award large or income-producing assets to one spouse, the court may

achieve an equitable distribution by authorizing off-setting

payments to the other spouse.  Swanson, 275 Ill. App. 3d at 528,

656 N.E.2d at 222.

          It also appears the trial court erred in allocating

marital assets and debts because the court ordered that marital

assets be used to satisfy Frantz's estimated 1994 tax liability of

$108,321, even though the court entered the dissolution judgment in

March 1994.  Since the parties' marriage was dissolved in March

1994, it is clear that a portion of Frantz's income for 1994 is

marital property which must be considered in the distribution of

marital assets.  Since no final judgment of legal separation was

entered in this case, section 503(a)(3) of the Act is not invoked. 

750 ILCS 5/503(a)(3) (West 1992).  However, the tax liability on

only that portion of Frantz's 1994 income which was earned prior to

the dissolution of marriage is a marital liability.  The fact that

the parties were living separately does not change the marital

nature of the income of either party, nor does it change the

marital nature of the income tax liability on that income, although

the incurring of penalties and interest by one party may be deemed

dissipation of assets.  On remand, the trial court must make a

determination as to how much of Frantz's 1994 income, and there-

fore, how much of the 1994 tax liability, is included in the

marital estate and may allocate these assets and liabilities to the

parties.

          The trial court ordered that marital assets be used to

satisfy Maryse's 1994 income tax liability.  Her income consisted

only of the maintenance she received during 1994, which did not

represent the acquisition of a separate marital asset.  The

Internal Revenue Code of 1939 allows one spouse to deduct payments

of separate maintenance to the extent those payments are includable

in the gross income of the recipient spouse, provided a joint

return is not filed.  See 26 U.S.C. §§71, 215 (1994).  However,

this does not control the determination of whether the income is a

marital asset or the resultant liability is a marital liability

under state law.  It would not be an abuse of discretion for the

trial court to order each party to pay his or her own income tax

liability after separation in light of the disparity in income to

each.  Nor would it be an abuse of discretion to have the liabili-

ties paid from the marital estate to the extent the incomes of each

party are substantially equivalent.  However, when the income and

tax liability of one party far exceeds the income and tax liability

of the other party, it may be an abuse of discretion to order

payment of both parties' income taxes out of the marital funds

because this inadvertently penalizes the party with the lower

income.  Here, the parties should have been ordered to pay his or

her own 1994 federal income tax liability.

          Concerning attorney fees, the trial court erred by

ordering that liquidated marital assets be used to pay Frantz's

attorney fees.  This, in effect, required that Maryse contribute to

Frantz's attorney fees.  Under section 508(a)(1) of the Act, the

trial court may order a party to pay all or part of the other

party's attorney fees and costs incurred in maintaining an action

under the Act.  750 ILCS 5/508(a)(1) (West 1992).  However, the

party seeking attorney fees must show an inability to pay the fees

and an ability of the other spouse to pay the fees.  In re Marriage

of Riech, 208 Ill. App. 3d 301, 312, 566 N.E.2d 826, 832 (1991).

          The record does establish that Frantz is able to pay his

attorney fees.

          As to the award of child support, section 505(a) of the

Act (750 ILCS 5/505(a) (West 1992)) creates a rebuttable pre-

sumption that a specified percentage of a noncustodial parent's

income represents an appropriate child support award.  In re

Marriage of Freesen, 275 Ill. App. 3d 97, 105, 655 N.E.2d 1144,

1150 (1995).  Section 505(a)(1) of the Act provides that, in the

case of two children, the minimum amount of child support which the

trial court should order is 25% of the noncustodial parent's net

income.  750 ILCS 5/505(a)(1) (West 1992).  The court may award

less child support if, after considering all relevant statutory

factors, it finds a reason for deviating from the guidelines.  750

ILCS 5/505(a)(2) (West 1992).  When determining whether to deviate

from the statutory guidelines, a trial court's consideration of the

factors set forth in section 505 of the Act is mandatory, not

directory.  Freesen, 275 Ill. App. 3d at 105, 655 N.E.2d at 1150. 

In addition, the trial court must make express findings when it

orders child support that is below the statutory minimum.  In re

Marriage of Morgan, 219 Ill. App. 3d 973, 974, 579 N.E.2d 1214,

1215 (1991).  In determining the child support obligation of a

high-income parent, the court must balance competing concerns. 

Lee, 246 Ill. App. 3d at 643, 615 N.E.2d at 1326.  On one hand,

child support awards are not intended to be windfalls.  Lee, 246

Ill. App. 3d at 644, 615 N.E.2d at 1326.  On the other hand, the

court must consider the standard of living the children would have

enjoyed absent parental separation and dissolution.  Lee, 246 Ill.

App. 3d at 643-44, 615 N.E.2d at 1326.

          During the parties' marriage, the children enjoyed an

affluent lifestyle, including trips, parochial school, piano

lessons, and restaurant meals.  In awarding child support in this

case, the trial court specifically found that Frantz is financially

able to pay child support, but failed to give any reason for its

downward deviation from the statutory guidelines.  The failure to

explain the deviation alone warrants reversal.  

          For the purpose of calculating child support, the

supporting parent's net income, as defined in section 505(a)(3) of

the Act, must be calculated.  750 ILCS 5/505(a)(3) (West 1992). 

Although, in calculating net income, federal and state income taxes

are deducted, we conclude the penalties and interest incurred for

the late and nonpayment of such taxes are not deductible in

arriving at a supporting parent's net income under the Act.  The

record does show that Frantz is financially able to pay child

support (in 1992, Frantz earned $225,820; in 1993, more than

$258,000; and in 1994, more than $292,000).

          Prior to the trial court in this case setting the child

support award, all of the factors enumerated in section 505(a)(3)

of the Act should be considered in determining net income.

          Finally, we consider whether the trial court committed an

abuse of discretion by awarding Maryse $2,750 per month in mainte-

nance reviewable after three years.  Once a trial court determines

that a maintenance award is appropriate under section 504(a) of the

Act, the court must consider relevant statutory factors to

determine the amount and duration of the award.  750 ILCS 5/504(a)

(West 1992).  Those factors include the resources of the party

seeking maintenance (including apportioned marital property), the

standard of living established during the marriage and its

duration, and the financial ability of the party from whom

maintenance is being sought to meet his needs as well as meeting

those of his former spouse.  750 ILCS 5/504(a) (West 1992).  

          In determining the amount and duration of maintenance,

the trial court must balance the realistic ability of the spouse to

support herself in some approximation of the standard of living

enjoyed during their marriage against a goal of financial inde-

pendence.  Harlow, 251 Ill. App. 3d at 158, 621 N.E.2d at 934.  In

addition, when former spouses have grossly disparate earning

potentials, the goal of financial independence may not be achiev-

able because of the dependent former spouse's inability to maintain

the standard of living shared during the marriage.  Harlow, 251

Ill. App. 3d at 159, 621 N.E.2d at 935.

          Although Maryse testified she planned to attend graduate

school, there was no evidence she had applied, been accepted, or

what course of study she would take.

          In the present case, the parties have grossly disparate

earning potentials.  Frantz has substantial income and future

earning ability, fostered by the award of his medical practice.  He

testified his net business income for 1994 was $292,940.  In

addition, there had been testimony in this case relating to

interest and dividend income, although no mention of that was made

at the hearing on maintenance.  Frantz is able to meet not only his

needs but those of Maryse.  Maryse, the children, and her sister

lived in her mother's home.  Although Maryse had obtained a

bachelor's degree in chemistry, she had not yet completed an

internship and did not have a job.  In addition, she was the

primary caregiver to the parties' children.  During the marriage,

Frantz and Maryse enjoyed an affluent lifestyle.  Maryse's realis-

tic ability to support herself in some approximation of the

standard of living enjoyed during the marriage is minimal.  The

trial court expressly found that the parties had "an opulent style

of life" and lived beyond their means.  We recognize the trial

court in this case made every effort to be fair and that Maryse's

proof on maintenance was somewhat less than adequate.  She

projected a "rent" of $1,500 per month based on what she thought it

would cost to obtain a house in Florida.  As it appears Frantz was

paying $1,500 per month on his mortgage for his new house, that

does not appear to be unrealistic.  In addition, she projected

utility bills ($225) based on what her mother was paying.  Maryse's

most recent financial affidavit concluded she required $6,982.67

for monthly living expenses.  There is a significant difference

between her expenses and the maintenance to be paid by Frantz.  The

award of maintenance in this case was inadequate.  Because this

case is remanded for reconsideration of property distribution,

there must also be reconsideration of the amount of maintenance and

whether permanent maintenance for Maryse would be appropriate.

          The judgment of the circuit court of Macon County is

reversed.  The cause is remanded for further proceedings consistent

with this opinion.

          Reversed and remanded.

          GARMAN, J., concurs.

          STEIGMANN, J., specially concurs.

          JUSTICE STEIGMANN, specially concurring:

          Although I do not disagree with the majority's decision

to reverse or anything it says in reaching that decision, I

disagree that it should be saying any of this in the first place. 

The majority claims to be giving deference to Talandis, which held

that, in the absence of an appellee's brief, a reviewing court

should reverse (1) if the appellant's brief demonstrates prima

facie evidence of reversible error, (2) the record supports the

appellant's allegations, and (3) a reviewing court cannot easily

evaluate the issues on appeal.  Talandis, 63 Ill. 2d at 133, 345

N.E.2d at 495.  The majority then concludes that "[t]he record in

this case is not so complicated as to prevent this court from

reviewing the issues on the merits."  Slip op. at 2.  I respect-

fully disagree.

          The record in this case is not simple, and the claimed

errors are not such that we can easily decide them without the aid

of the appellee's brief.  The 22-volume record consists of over

2,500 pages.  Further, the scrutiny the majority was required to

give this record in order to decide this case and to prepare its

carefully detailed opinion belies the majority's assertion

regarding the uncomplicated nature of this record.  

          I agree with the majority that an analysis of the record

reveals prima facie evidence of reversible error.  Maryse's brief

clearly supports her challenges to the propriety of the trial

court's rulings, with appropriate citations to the record and case

authority.  Accordingly, we should take the supreme court at its

word in Talandis, reverse the trial court's judgment, and remand

with directions that the trial court grant Maryse all of the relief

she requested on appeal.  We should do so without ever addressing

the merits of the trial court's order.

          It is somewhat ironic that part of the explanation the

majority provides for its willingness to address this case on the

merits is its wish to give deference to the work of the trial

judge.  See slip op. at 2.  I suggest that the majority's willing-

ness to decide this case on the merits in the absence of an

appellee's brief--which might have addressed some of the majority's

concerns regarding the trial court's rulings--runs contrary to the

deference the majority claims to show.  No trial court likes to get

reversed, but it would be far more palatable to be reversed because

the appellee simply failed to show up at the appellate court than

to be reversed--purportedly on the merits--when no one defended the

trial court's rulings in the appellate court.  As the majority cor-

rectly points out, "a reviewing court should not be compelled to

serve as appellee's advocate."  Slip op. at 2.  So, if this court

does not serve as appellee's advocate, and the appellee elects not

to appear himself, then who is supposed to defend the trial court's

rulings?

          I indicated earlier that I had no disagreement with the

majority on the merits, but in so stating I should clarify that

this concurrence is based upon the majority's assessment of the

record and the trial court's rulings in the absence of anyone

appearing in this court to argue that those rulings were correct. 

Under Talandis, we need be satisfied only that the record reveals

prima facie evidence of reversible error--a standard I think this

record clearly shows.  Nonetheless, it is at least possible that

had the trial court had someone defending its rulings before us,

our assessment of some (or even all) of those rulings might have

changed.  Speaking only for myself, it often happens that I am much

more impressed with an appellant's arguments after having read only

the appellant's brief than I am after I have also read the

appellee's brief.