THE DEPARTMENT OF PUBLIC AID *ex rel.* ANTOINETTE NALE, Petitioner-Appellant, v. MICHAEL NALE, Respondent-Appellee.

Fourth District  No. 4—97—0095

Argued September 24, 1997.—Opinion filed February 9, 1998.

748

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Laura M. Wunder (argued), Assistant Attorney General, of counsel), for appellant.

John D. Alleman (argued), of Alleman & Associates, of Carbondale, for appellee.

JUSTICE COOK delivered the opinion of the court:

Michael and Antoinette Nale were divorced in December 1988. Two children were born to the parties: Jessica, now age 17, and Garrett, now age 15. Under the separation agreement incorporated into the judgment for dissolution of marriage, Antoinette was designated primary physical custodian of the children and Michael paid $400 per month in child support. In August 1996, the Illinois Department of Public Aid (IDPA), acting on behalf of Antoinette, filed a petition to modify child support, which was denied in October 1996. In January

1997, IDPA's motion to reconsider was denied. We reverse and remand with directions.

When Antoinette and Michael separated in December 1988, they entered into a separation agreement that provided Antoinette had primary physical custody of the children and Michael was to have reasonable visitation rights. This agreement was incorporated into the order dissolving their marriage, entered later that month. The agreement provided Michael would pay child support of $200 per month per child, subject to modification in accordance with statutory guidelines should Michael receive a pay increase.

In 1996, Antoinette availed herself of the child support services of the IDPA, although she was not receiving public aid. See 305 ILCS 5/10—1, 10—10 (West 1996); *In re Marriage of Lappe*, 176 Ill. 2d 414, 438-39, 680 N.E.2d 380, 392 (1997) (upholding the constitutionality of IDPA's child support enforcement program). In August 1996, the IDPA filed a petition on behalf of Antoinette to increase child support, alleging an increase in the children's needs and an increase in Michael's ability to pay. Antoinette attached her financial affidavit to her petition. In his response, Michael admitted both the children's needs and his ability to pay have increased. Michael requested that, if the court increased his child support obligation, he be awarded the state and federal income tax deductions for the children and be given credit for the periods he has actual custody of the children for summer and holiday visits.

In October 1996, the trial court heard the petition to modify. Antoinette's affidavit listed her gross annual income as $53,818, and her weekly gross income as $1,035 (or $4,484.83 per month). After taxes and social security deductions, Antoinette earns $831.95 per week ($3,605.12 per month). She testified her most recent take-home pay was $1,130 for a two-week period (or $2,260 per month). The affidavit indicates her monthly expenses amount to $2,626.40, in addition to $327.72 in car loans and credit card payments.

Michael's income had increased since the dissolution. He testified his "salary in 1989" was $32,000 to $33,000. According to Michael's tax forms, he earned a gross income of $38,489.26 in 1993, $42,794.05 in 1994, and $45,516.36 in 1995. Michael testified that in 1996 his "annual salary [was] just over $51,000." According to a recent pay stub, his take-home pay is $1,309.68 every two weeks for a period of nine months a year. Michael has remarried since the dissolution, and his tax returns suggest his current wife is also employed.

Antoinette testified the children stay with Michael more often than every other weekend and they spend one-half of holiday vacations with him. Michael testified his son lived with him the first

trimester of the school year and was with him for more than half of the summer. Antoinette testified Garrett was with Michael half of the summer but Jessica stopped spending half of the summer with Michael two years before the hearing.

In addition to $400 per month in child support, Michael pays $150 per month to provide health insurance coverage for the children. Michael stated he also provided for all the children's needs during periods of extended visitation and continued to pay the full amount of support to Antoinette when he had custody of the children. Michael has taken several vacations with the children in the last few years and also gives them gifts on holidays.

Antoinette testified the children's needs have increased significantly since the child support order in 1989. Antoinette testified in general terms as to the types of expenses she incurred on behalf of the children, but she was unable to calculate and testify exactly how much it cost her each month to support the children. Antoinette detailed significant expenditures for allowances, extracurricular activities, a car for Jessica, birthdays and Christmas, and vacations. Antoinette testified the children have bank accounts at three different institutions. Each has about $1,000 in his or her respective account at the credit union, $2,000 each in a Putnam Investment account, and $400 to $500 each in a First Mutual Investment account.

On cross-examination Antoinette testified Jim Forester has lived in her home for three years. She described him as her "significant other" and stated she planned to marry him sometime in the spring of 1997. Forester earns $36,000 per year. Antoinette testified Forester contributes to the household "no more than what his normal expenses would be." He does not pay her rent or contribute to her mortgage payment, taxes, or insurance. Forester does not pay for water and sewer services. Nor does Forester pay for telephone, trash collection, or cable television. However, Antoinette testified Forester "pays his share in the house," stating further that "every now and then he will pay a utility bill or a water bill" or pay the cleaning lady. Antoinette testified he sometimes buys groceries, pays his own car insurance, and "takes care of other types of things around the house." When the court asked her to present cancelled checks to document Forester's contributions, she was unable to do so.

At the close of testimony, IDPA's counsel stated that though the statutory child support amount was $763.56 per month, the children's needs justified an upward deviation in child support, to $800 per month. Michael's counsel argued that some increase in child support was appropriate, given the rising needs of the children and his rising income. However, he argued $600 per month was adequate. He again

requested the income tax exemptions and credit for time he spent with the children.

In pronouncing judgment, the trial court recited the statutory factors and then made the following statement:

"This court, after having considered the statutory factors, finds that the statutory amount is not appropriate in this situation, that the amount of support being paid under the current situation is adequate in view of the resources of the children, the physical and emotional needs of the children, and educational needs. So far as this court is aware, Section 720 ILCS 5[/]11—8 [(West 1996), defining the misdemeanor crime of fornication,] [h]as not been repealed in this state and is still good law. This woman comes before this court asking for an increase in child support but at the same time supports a man not her husband. And yet argues to this court that she needs additional support. She is living in a[n] open state of fornication in violation of the law. This petition is denied."

In January 1997, Antoinette's motion to reconsider was heard. Antoinette offered evidence of Forester's contributions to the household, but the trial court rejected it and did not allow her to make an offer of proof. The trial court reaffirmed its decision to deny any increase in child support.

■ Section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510 (West 1996)) imposes certain prerequisites on modifications of child support awards. All agree that Michael's increased income constitutes a "substantial change in circumstances," sufficient to justify a modification of child support. 750 ILCS 5/510(a)(1) (West 1996). Accordingly, we need not address whether Michael's increased income would also justify an award under the provisions for an automatic increase under section 510(a)(2)(A). 750 ILCS 5/510(a)(2)(A) (West 1996) (in IDPA cases, an increase of over 20% in the payor spouse's income automatically allows a modification of child support).

Once a modification is authorized under section 510, a trial court is to set the amount by considering the same factors used to determine an initial child support order. See In re Marriage of Bussey, 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233-34 (1985). The modification of child support payments lies within the sound discretion of the trial court. Bussey, 108 Ill. 2d at 296, 483 N.E.2d at 1233.

However, there are limits on this discretion. Section 505(a) of the Act creates a rebuttable presumption that a specified percentage of a noncustodial parent's income represents an appropriate child support award. In re Marriage of Freesen, 275 Ill. App. 3d 97, 105, 655 N.E.2d 1144, 1150 (1995). This presumption also applies in modification

proceedings. *People ex rel. Hines v. Hines*, 236 Ill. App. 3d 739, 745, 602 N.E.2d 902, 907 (1992). Michael, the party seeking a deviation from child support guidelines, has the burden of producing evidence justifying the deviation. *In re Marriage of Blaisdell*, 142 Ill. App. 3d 1034, 1041, 492 N.E.2d 622, 627 (1986). Compelling reasons must be presented to overcome the presumption that the guidelines will be applied. *In re Marriage of Stanley*, 279 Ill. App. 3d 1083, 1085, 666 N.E.2d 340, 341 (1996).

■ Initially, we address the trial court's focus on Antoinette's living arrangement. The statute defining fornication no longer defines mere cohabitation as a crime. Compare Ill. Rev. Stat. 1991, ch. 38, par. 11—8(a), with 720 ILCS 5/11—8(a) (West 1996). Moreover, while a custodial parent's fornication could have, in some circumstances, justified a change of custody prior to the amendment (see *Jarrett v. Jarrett*, 78 Ill. 2d 337, 346-47, 400 N.E.2d 421, 424 (1979)), it provides poor grounds for limiting child support (*cf. People ex rel. Winger v. Young*, 78 Ill. App. 3d 512, 514, 397 N.E.2d 253, 255 (1979) (cutting off child support is an inappropriate sanction for interference with court-ordered visitation)). While this may be an appropriate response to some parental misconduct, it is a drastic sanction, and the movant bears a heavy burden of proof. *Cooper v. Cooper*, 59 Ill. App. 3d 457, 466, 375 N.E.2d 925, 931-32 (1978). It is not appropriate for the trial court to limit child support without any evidence or argument as to the effect of the living arrangement on the children or the appropriateness of this particular response.

■ Antoinette's living arrangement could still be relevant insofar as it affected her resources. See 750 ILCS 5/505(a)(2)(b) (West 1996). The trial court's emphasis on the allegedly criminal nature of the relationship suggests its primary concern was not its effect on the household's resources. However, on appeal we review the trial court's judgment, not its reasoning. See *Leonardi v. Loyola University*, 168 Ill. 2d 83, 97, 658 N.E.2d 450, 457 (1995).

The trial court may not normally examine the financial status of others in the household who have no legal relationship to the child. *Cf. In re Marriage of Keown*, 225 Ill. App. 3d 808, 813, 587 N.E.2d 644, 647 (1992) (income of obligor's spouse not to be considered in determining obligor's ability to pay child support, except in equity, to determine if payment would endanger ability of supporting party's household to meet its needs). Still, the trial court may ensure child support is, in fact, benefitting the children. See Uniform Marriage and Divorce Act 9A U.L.A. § 309, Comment, at 400 (1987). Accordingly, the trial court may deviate downward from child support guidelines if it determines the supporting parent is using support to

pay for an unwarranted benefit to someone, such as Forester, who is not entitled to support. See *People ex rel. Graham v. Adams*, 239 Ill. App. 3d 643, 647, 608 N.E.2d 614, 617 (1993).

However, the trial court's reliance on the mere fact that such a person lived in the recipient household effectively punishes the children for living arrangements over which they had no control. See *Department of Public Aid ex rel. Temple v. Van Kampen*, 243 Ill. App. 3d 767, 771, 612 N.E.2d 882, 885 (1993). According to Antoinette's unrebutted testimony, Forester made some contributions to the home. While Forester apparently received a windfall by living in the home without paying rent or utilities, there was no showing Antoinette conferred this benefit on him by using child support or resources that would have otherwise been available for the children.

We are not imposing a heavy burden on Michael. We are well aware of the difficulties of discovering financial details about a household of which one is not a member. In appropriate circumstances, the financial resources of the parties may alone make it clear that someone other than the children is receiving the benefit of child support. See *Graham*, 239 Ill. App. 3d at 646, 608 N.E.2d at 616-17 (deviation from the guidelines was appropriate where the recipient household was destitute, so that guideline amount would effectively make payor father provide resources for entire household, including children not entitled to support). Here, however, Antoinette had a well-paying job and could easily have provided some living expenses for Forester while paying her share of the children's support. Accordingly, the burden of production remains with Michael until he presents more specific evidence that his child support is being diverted to Forester or others.

■ The trial court mentioned it considered the needs of the children. Michael notes there was little evidence regarding the actual cost to support the minor children, and there was no evidence the children were being deprived in any way or that they were living a lifestyle below that which they would have enjoyed had the parties remained married.

This argument is flawed. First, it ignores the role of the statutory presumption. Again, Michael has the burden of producing evidence justifying the downward deviation from support guidelines. *Blaisdell*, 142 Ill. App. 3d at 1041, 492 N.E.2d at 627. He cannot rely on Antoinette's failure to present evidence to meet this burden. More important, Michael admitted in his response to the petition to modify that the needs of the children had increased since the dissolution. While Antoinette's financial affidavit may have included some expenses that should have been attributed to Forester, her testimony still supported this admission.

In Michael's response to the petition to modify he also admitted his income had increased. The evidence at trial supported this admission. If the evidence shows a significant increase in both the obligor's income and the needs of the children, and does not provide any other evidence to suggest reduced support is appropriate, the trial court abuses its discretion by denying a petition to increase child support to conform to the statutory guidelines. See *In re Marriage of Heil*, 233 Ill. App. 3d 888, 895, 599 N.E.2d 168, 173 (1992).

■ The trial court mentioned the resources of the children justified a downward deviation from support guidelines. The record demonstrates the children had bank accounts of roughly $3,500 each. The resources of the children are relevant under section 505. 750 ILCS 5/505(a)(2)(a) (West 1996). However, this factor has only justified a reduction in child support when a child has significant financial resources relative to his parents. See, *e.g.*, *In re Marriage of Frazier*, 205 Ill. App. 3d 621, 623, 563 N.E.2d 1236, 1238 (1990) (child support below statutory guidelines warranted when child could access a $72,234.54 trust account and child's estate far exceeded payor's financial resources); *In re Marriage of Wentink*, 132 Ill. App. 3d 71, 80, 476 N.E.2d 1109, 1115 (1984) (child support below statutory amount within trial court's discretion when child is beneficiary of two trusts valued in excess of $275,000, equal in value to roughly 87% of the parents' joint assets). This is not such a case.

■ A deviation from child support guidelines cannot be justified by Antoinette's income alone. It is true that Antoinette earns more than Michael. Moreover, the statute explicitly provides that both parents have an obligation to provide financial support for the children. See 750 ILCS 5/505(a) (West 1996). However, the idea that a payor of child support should pay reduced child support based on the custodian's income has repeatedly been rejected. See *In re Marriage of Kern*, 245 Ill. App. 3d 575, 577, 615 N.E.2d 402, 404 (1993); *Blaisdell*, 142 Ill. App. 3d at 1047-48, 492 N.E.2d at 631.

■ We also reject Michael's argument that the statutory guidelines should not be applied here because of the parents' high incomes taken together. It is true that the utility of the statutory child support guidelines decreases as the incomes of the parties increase. *In re Marriage of Harmon*, 210 Ill. App. 3d 92, 96, 568 N.E.2d 948, 951 (1991). Child support payments are not intended to be windfalls to the children. *In re Marriage of Bush*, 191 Ill. App. 3d 249, 261, 547 N.E.2d 590, 596-97 (1989). However, even with parents earning high incomes, the trial court must consider the standard of living the child would have enjoyed had the parents remained married. *In re Marriage of Lee*, 246 Ill. App. 3d 628, 644, 615 N.E.2d 1314, 1326 (1993).

Applying the statutory guidelines in this case would not result in an unfair windfall to the children. Cases in which the parents' high incomes have justified a deviation from the statutory guidelines have generally involved parents earning substantially more than the Nales. See *Harmon*, 210 Ill. App. 3d at 94-95, 568 N.E.2d at 950 (parents had a joint gross annual income of roughly $180,000, and the parties had three children); *Bush*, 191 Ill. App. 3d at 253, 547 N.E.2d at 592 (parents had joint gross annual income of roughly $386,000 and the parents were supporting one child).

For the reasons stated, we reverse the trial court. The trial court did not make any findings as to the amount provided by statutory guidelines, and specifically whether Michael is entitled to credit against his income for health insurance premiums. See 750 ILCS 5/505(a)(3)(f) (West 1996). Because it would be inappropriate for us to enter an award for a specific amount where such factual uncertainty remains, we remand with directions for the trial court to determine Michael's net income under the Act and enter a child support award equal to the amount provided by statutory guidelines.

Reversed and remanded with directions.

STEIGMANN and McCULLOUGH, JJ., concur.