*In re* MARRIAGE OF HARRY TIMOTHY GARRETT, Petitioner-Appellant, and ELIZABETH ANN GARRETT, Respondent-Appellee.

Fifth District    No. 5—01—0728

Opinion filed February 3, 2003.

John A. Clark, of Croegaert, Clark & Hough, Ltd., of Olney, for appellant.

William K. Thomas, of Thomas & Lane, of Robinson, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

A former wife petitioned for increased child support. The circuit court of Lawrence County, Judge Robert M. Hopkins, increased the former husband's child support payment to the statutory guidelines' minimum of $824 per week. The former husband appeals, claiming that (1) the award is substantially greater than the reasonable needs of one child and (2) the court improperly employed income averaging for the purpose of establishing child support. We affirm.

## I. BACKGROUND

Dr. Harry and Elizabeth Garrett's marriage was dissolved in July 1993. At the time of their divorce, the Garretts had two children—a daughter, Allison, who was 1, and a son, Jeffrey, who was 11. Prior to the dissolution, the trial court had made a finding on a petition for

interim relief that Harry's 1992 net income for purposes of child support was $175,000 and that his net income would be somewhat reduced for 1993. Subsequently, the trial court approved a marital settlement agreement setting child support at $700 per week for the two children.

In 1999, Elizabeth Garrett filed a petition for modification, seeking increased child support based on the increased needs of the children and on Harry's increased income. Harry, a self-employed physician, provided sketchy financial information at the trial. However, the court found that his net income for child support purposes was $240,034 in 1998, $237,897 in 1999, and $164,836 in 2000. The court further found that there had been a trend toward growth in his gross income between 1992 and 1999 and that the reduction in his gross income from 1999 to 2000 was atypical and unexplained by Harry's testimony. The court averaged Harry's net income for the previous three years, arriving at a figure of $214,255. The court found that there had been a substantial change in circumstances—both an increase in the needs of the children and an increase in Harry's income—warranting a modification in child support. The court then established his child support obligation for daughter Allison at the 20% statutory guidelines' minimum of $824 per week and ordered payment until Allison reached age 18. The court's order had awarded 25% for both children until June of 2000, terminating upon Jeffrey's graduation from high school. Jeffrey, although still living with his mother, had become emancipated by the time of the trial and was attending a nearby community college. Following the dissolution, Elizabeth had returned to college and obtained a teaching degree. At the time of the trial she had secured her first teaching job and was earning a net income of $19,200 per year.

Harry appeals the decision of the trial court, arguing that the court abused its discretion by (1) setting child support at a level substantially greater than the reasonable needs of the child and (2) averaging his income for the previous three years to establish his obligation. We affirm the trial court's decision.

## II. ANALYSIS

### A. Child Support

■ Motions to modify child support must be decided on the facts and circumstances of each case; therefore, the standard of review is whether the trial court abused its discretion. See *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 35-36, 687 N.E.2d 1080, 1087 (1997). "An abuse of discretion occurs only where no reasonable person could agree with the position taken by [the] trial court." *In re Marriage of Ackerley*, 333 Ill. App. 3d 382, 395, 775 N.E.2d 1045, 1057 (2002).

Harry contends that the trial court should have deviated downward from the statutory guidelines (see 750 ILCS 5/505(a)(1) (West 2000)) because 20% of his net income provides a child support level substantially greater than the reasonable needs of the child. We recognize that there is one Illinois Supreme Court case, *In re Marriage of Bussey*, 108 Ill. 2d 286, 483 N.E.2d 1229 (1985), where the court affirmed a trial court's decision to establish a child support obligation below the statutory guidelines' minimum. Our research, however, has not revealed any Illinois Supreme Court case that has reversed a trial court's decision establishing child support at the statutory guidelines' minimum.

■ Section 510(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that a substantial change in circumstances will justify a modification of child support. 750 ILCS 5/510(a)(1) (West 2000). The burden of showing that a substantial change in circumstances has occurred is on the moving party. See *In re Marriage of Bean*, 181 Ill. App. 3d 671, 673, 537 N.E.2d 342, 344 (1989). A court may increase the amount of child support solely on the basis of a parent's increased ability to pay. See *In re Marriage of Bean*, 181 Ill. App. 3d at 674, 537 N.E.2d at 344-45. Additionally, it can be presumed that the cost of raising a child increases as the child grows older. See *In re Marriage of Riegel*, 242 Ill. App. 3d 496, 499, 611 N.E.2d 21, 23 (1993).

■ Section 505(a)(1) of the Act sets forth guidelines for determining the percentage amount of child support. 750 ILCS 5/505(a)(1) (West 2000). Section 505(a)(2) then provides:

"(2) The above guidelines shall be applied in each case unless the court makes a finding that application of the guidelines would be inappropriate, after considering the best interests of the child in light of evidence including but not limited to one or more of the following relevant factors:

(a) the financial resources and needs of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non[ ]custodial parent.

If the court deviates from the guidelines, the court's finding shall state the amount of support that would have been required under the guidelines, if determinable. The court shall include the reason or reasons for the variance from the guidelines." 750 ILCS 5/505(a)(2) (West 2000).

The same guidelines and factors apply when the court considers an increase in child support. See *In re Marriage of Bussey*, 108 Ill. 2d at 296, 483 N.E.2d at 1233.

■ The question of whether to deviate downward from the statutory guidelines when dealing with above-average incomes presents a dilemma. The consideration of all the relevant factors "in the best interest of the child" can often end in the simple query of "how much is too much?" The jurist must keep in mind that what is considered reasonable by some families' standards may be considered extravagant by other families' standards. For example, most families would find a European vacation unthinkable, but for the privileged few it might be an annual event. Fortunately, the statute itself, by requiring express reasons for a downward deviation, affords safeguards against jurists imposing their personal beliefs of what is reasonable. See 750 ILCS 5/505(a)(2) (West 2000). Further, case law has imposed a presumption that the guidelines apply absent compelling reasons, which places the burden on the party urging the deviation. "[A] determination of child support under the Act begins with the presumption that the guidelines will be applied. Compelling reasons must exist in order to overcome that presumption and permit the court to deviate from the guidelines." *In re Marriage of Stanley*, 279 Ill. App. 3d 1083, 1085, 666 N.E.2d 340, 341 (1996); see also *In re Marriage of Ackerley*, 333 Ill. App. 3d at 396, 775 N.E.2d at 1057; *In re Marriage of Rogliano*, 198 Ill. App. 3d 404, 411, 555 N.E.2d 1114, 1118 (1990).

Harry complains that the child support is a windfall to Elizabeth and that in its award the trial court should have considered the personal finances of Elizabeth. According to Harry, Elizabeth has elected to live so frugally that only a portion of the child support is actually spent. Harry believes that Elizabeth has effectively circumvented the intent of the child support order and basically converted these funds intended for the children into spousal maintenance. There is no evidence, however, in the record to support the proposition that Elizabeth has in any way misappropriated child support money for her own use. The court will not engage in gross speculation in that regard. The fact that Elizabeth has placed money in savings to provide for future uncertainties is commendable. Responsible adults do not spend every penny available to them. This court does not want to instruct that unless a custodial parent spends the allotted child support money within the month it is received, the court will deem the excess unnecessary.

Harry relies entirely on the decisions of *In re Marriage of Singleteary* and *In re Marriage of Bush*, 191 Ill. App. 3d 249, 547 N.E.2d 590 (1989), in support of his argument that the court should have

deviated downward from the statutory guidelines. He points out that the court in each case emphasized that a child support award is not intended as a windfall to the custodial parent. See *In re Marriage of Singleteary*, 293 Ill. App. 3d at 36, 687 N.E.2d at 1088; *In re Marriage of Bush*, 191 Ill. App. 3d at 261, 547 N.E.2d at 597. In each case, however, the facts involved a situation where *both* parents' *individual incomes* were more than sufficient to meet the child's needs and allow him the lifestyle he would have enjoyed if the parties had not divorced. The courts' holdings were clearly limited to such circumstances. The *In re Marriage of Bush* court stated, "We now hold that *where the individual incomes of both parents* are more than sufficient to provide the reasonable needs of the parties' children, taking into account the life-style the children would have absent the dissolution, the court is justified in setting a figure below the guideline amount." (Emphasis added.) *In re Marriage of Bush*, 191 Ill. App. 3d at 260, 547 N.E.2d at 596; see also *In re Marriage of Singleteary*, 293 Ill. App. 3d at 36, 687 N.E.2d at 1088. Such is not the case here. Elizabeth's net annual income of $19,200 is nominal compared to Harry's averaged net income of $214,255 and clearly could not be considered sufficient to provide the reasonable needs of Allison, taking into account her lifestyle before her parents' dissolution.

   ■ While we recognize that the support of a child is the joint obligation of the parents, it is clear that when one parent earns a disproportionately greater income than the other, that parent should bear a larger share of the support. See *In re Marriage of Singleteary*, 293 Ill. App. 3d at 38, 687 N.E.2d at 1089. Elizabeth's affidavit of monthly living expenses for her household totaled $3,422. The child support established by the trial court totals $3,507.66 per month. We are aware that the amount paid in child support currently exceeds the monthly expenses for the entire household, but a child's entitlement to a level of support is not limited to his or her "shown needs." Harry's argument that Allison is only entitled to her "shown needs" has been rejected by the Illinois Supreme Court in *In re Marriage of Bussey*, for the reason that it, in effect, ignores the consideration of the standard of living that the child would have enjoyed if the marriage had not been dissolved. *In re Marriage of Bussey*, 108 Ill. 2d at 297, 483 N.E.2d at 1234; see *In re Marriage of Ackerley*, 333 Ill. App. 3d at 396, 775 N.E.2d at 1057. In *In re Marriage of Ackerley*, the trial court awarded $3,000 per month for one child. Even though the award was below the statutory minimum, the obligor husband appealed, claiming that it was greater than the needs of the child. In affirming, the appellate court pointed out that needs are just one of the factors to consider. The court went on to state: "[I]t is inferrable that, if the marriage had

not dissolved, petitioner's son would have been enjoying a higher standard of living. Had he been enjoying the same standard of living while residing with petitioner, it is apparent that the family's monthly expenses would have been higher." *In re Marriage of Ackerley*, 333 Ill. App. 3d at 395-96, 775 N.E.2d at 1057. The expenses of the family are explicitly tied to the current level of child support. Elizabeth claims that if she had greater funds to expend, then her expenses would be greater. Harry points out that Allison wants for nothing, and he notes that he takes her on family vacations, citing a recent trip to Jamaica. His point, however, illustrates the kind of lifestyle that families in his income bracket frequently enjoy. Elizabeth, too, should be able to take Allison to Jamaica; however, her limited resources do not allow such a lifestyle. In *In re Marriage of Rogliano*, this court stated, "[W]here a noncustodial parent has the ability to pay support in excess of the stated needs of the child, a court may order child support in excess of the needs to enable the child to enjoy the standard of living he would have had if the marriage had not been dissolved." *In re Marriage of Rogliano*, 198 Ill. App. 3d at 412, 555 N.E.2d at 1119.

■ It is also clear from the record that Harry's financial resources of more than $170,000 after paying Allison's support are ample to meet his needs.

We conclude, as did the trial court, that Elizabeth established a substantial change in circumstances, entitling her to a modification in child support. We also conclude that Harry has not met his burden of justifying a downward deviation from the statutory support guidelines. See *Department of Public Aid ex rel. Nale v. Nale*, 294 Ill. App. 3d 747, 752, 690 N.E.2d 1052, 1056 (1998). Accordingly, we hold that the court did not abuse its discretion in applying the statutory guidelines.

## B. Income Averaging

■ Harry's second argument is that the trial court abused its discretion by averaging his income for the previous three years in order to establish the amount of child support owed. Although he recognizes that in some instances an income-averaging approach is necessary, Harry does not believe that it was appropriate under these circumstances. Instead, he believes that the trial court should have used only the 2000 projected net income figure of $164,836 in applying the statutory guideline. This calculation would have resulted in a child support obligation of $622 per week, and this figure would have been acceptable to Harry.

A trial court's finding of net income is within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. See *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 103, 655 N.E.2d

1144, 1148 (1995). In situations where income fluctuates from year to year, income averaging is an approved method to apply in determining current net income for the purpose of establishing child support. See *In re Marriage of Freesen*, 275 Ill. App. 3d at 103, 655 N.E.2d at 1148. Income averaging may be applied in any case where it is appropriate, and there does not need to be wild fluctuation before averaging may be applied. See *In re Marriage of Freesen*, 275 Ill. App. 3d at 103, 655 N.E.2d at 1148.

We agree with the trial court's decision to average the net income of the previous three years because the annual income amounts varied significantly from year to year. Specifically, the court found Harry's 1998 net income to be $240,034, his 1999 net income to be $237,897, and his 2000 net income to be $164,836. Further, considering the fact that the court found the reduction in Harry's gross income from 1999 to 2000 (the time this action was pending) atypical and unexplained by Harry's testimony, the court would have been justified in excluding the 1999 to 2000 income altogether and substituting 1997's income of $197,497, thereby resulting in an even higher averaged income.

Accordingly, we find that the trial court did not abuse its discretion in using income averaging under these circumstances.

## III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court modifying the support order to $824 per week.

Affirmed.

MAAG and KUEHN, JJ., concur.