*In re* KEON C., a Minor (Jamie Hall, Petitioner-Appellee, v. Arian Keon Clark, Respondent-Appellant).

Fourth District   Nos. 4—02—0977, 4—03—0079 cons.

Argued September 16, 2003.—Opinion filed December 10, 2003.

COOK, J., dissenting.

Anne M. Martinkus (argued), of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellant.

Nancy S. Fahey (argued), of Dukes, Ryan, Meyer, Fahey, Freed & Goodwin, Ltd., of Danville, for appellee.

JUSTICE MYERSCOUGH delivered the opinion of the court:

Respondent, Arian Keon Clark, appeals the trial court's order (1) setting child support at $8,500 a month, (2) ordering him to pay all uncovered medical expenses for Keon C., born February 29, 2000, (3) ordering him to pay attorney fees, and (4) finding him in indirect civil contempt. We affirm as modified and remand with directions.

## I. BACKGROUND

In February 2001, petitioner, Jamie Hall, filed a petition to establish a parent and child relationship on behalf of Keon C., alleging that respondent was the minor's natural father. In July 2001, respondent admitted the allegation of paternity. In August 2001, the trial court entered a temporary order, granting petitioner custody of Keon C. subject to respondent's visitation rights, ordering respondent to pay $3,000 a month in temporary child support to be due by the first day of each month beginning in July 2001, and ordering respondent to pay all medical expenses on behalf of Keon C.

In October 2002, the trial court held a hearing on all issues. The record demonstrates that the parties lived together from March 1999 to September 2000, six months of which were after Keon C. was born. When respondent played professional basketball with the Denver Nuggets, the parties lived in Denver, Colorado, in a four- or five-bedroom apartment that respondent purchased and for which he paid approximately $2,200 per month. At the time of the hearing, petitioner was 25 years old and rented a three-bedroom apartment in Indianapolis, Indiana, where she resided with Keon C. and her eight-year-old son. Petitioner worked part-time at Methodist Hospital, earning $9.93 per hour, and attended Ivy Tech State College in its graphic design program, expecting to graduate in December 2003. Petitioner's financial affidavit revealed that her net monthly income was $731.64, her expenses were $4,220.97, $282.65 of which were educational expenses. She estimated that she spent "maybe" $1,000 a month for Keon C., but admitted that she was estimating, and she really did not "have any idea." Petitioner admitted that respondent does have health insurance for Keon C., and respondent had paid to date all the uncovered medical expenses for Keon C.

In his financial affidavit, respondent listed $16,246.32 in monthly expenses ($3,000 of which was for child support) and $58,404.75 in net monthly income. The record reveals that in 2001, respondent earned $1.4 million. Respondent testified that as of October 1, 2002, he was moving to Sacramento, California, where he would be employed as a

professional basketball player with the Sacramento Kings. Effective November 1, 2002, his salary would increase to $4.5 million. He incurred approximately $45,000 in business expenses per year. He rented a four-bedroom house with a basement in California for which he paid approximately $2,000 in monthly rent.

On October 18, 2002, the trial court entered an order establishing, in part, child support at $8,500 a month, which amounted to a downward deviation from the full 20% set forth by statute. The court directed the parties to calculate the arrearage owed back to March 1, 2001. The court ordered the calculation to be submitted to the court within five days from entry of its order, and the arrearage was to be "figured up to the first payment of support under this [o]rder, which is the first Friday in November 2002." The court further ordered the resulting arrearage to be paid within 30 days of the entry of the order. Both parties submitted their own child-support computations based on respondent's gross income of $1.4 million, as reported on his 2001 income-tax return.

On November 1, 2002, petitioner filed a request for attorney fees of $4,387, which the trial court granted. On November 15, 2002, respondent filed his notice of appeal, appealing that part of the court's order (1) establishing child support at $8,500 per month retroactive to March 1, 2001, and (2) ordering him to pay petitioner's attorney fees. On November 18, 2002, petitioner filed a notice of hearing for status and set the matter for hearing for December 5, 2002.

On December 5, 2002, neither respondent nor his attorney appeared for the status hearing. After the hearing, that same day, petitioner filed a petition for rule to show cause, requiring respondent to show why he should not be held in contempt of court for failing to obey the court's October 18, 2002, order, specifically, failing to (1) make his December 2002 child support payment of $8,500, (2) pay the $125,000 arrearage by December 2, 2002, and (3) provide an insurance card to petitioner for Keon C. The petition further alleged that a hearing had been scheduled for 8:30 a.m., December 5, 2002, and respondent's attorney failed to appear. On December 5, 2002, the trial court issued a rule to show cause, ordering respondent and his attorney to appear before the court on December 11, 2002, or be subject to a body attachment.

Respondent filed a response to the petition for rule to show cause, arguing that (1) his notice of appeal automatically stayed the trial court's October 8, 2002, order; (2) at the time the notice for hearing on the status and the hearing on the status was held, the trial court no longer had jurisdiction because of the notice of appeal he filed; and (3) the rule to show cause issued December 5, 2002, was done without

notice to respondent's attorney and, therefore, violated respondent's due process rights. Respondent argued that his attorney received the petition for rule to show cause and the rule to show cause by ordinary mail late Monday afternoon, December 9, 2002, less than 48 hours before the scheduled hearing at 2:45 p.m., December 11, 2002.

In January 2003, the trial court entered an order on the rule to show cause, finding (1) that the notice of appeal did not stay the enforcement of money judgment because no appeal bond accompanied it and no motion for stay of enforcement was filed, and (2) respondent in contempt for his failure to abide by the court's October 18, 2002, order. In addition, the court provided a purge provision. In January 2003, respondent filed a motion for leave to file an amended notice of appeal, which this court granted.

This appeal followed.

## II. ANALYSIS

### A. Child Support

Respondent first complains that the trial court did not sufficiently deviate downward from the statutory guideline (see 750 ILCS 5/505(a)(1) (West 2000)) in setting child support. Specifically, respondent argues that the trial court erred in establishing child support at $8,500 per month, such an amount results in a windfall to both petitioner and her other child, and is excessive. Respondent posits petitioner "should certainly be able to provide Keon [C.] with a comfortable life-style at $3,000 per month." Respondent acknowledges that he earns a large income; however, he contends that his large income does not justify awarding a child support obligation 8$\frac{1}{2}$ times greater than Keon C.'s needs, especially because petitioner is also supporting another child from a different relationship. Respondent argues that the $3,000-per-month amount he proposed takes into account the standard of living Keon C. would have enjoyed had the parties' relationship not ended, as well as the other factors outlined in section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505(a) (West 2000)). We disagree.

Section 505(a)(1) of the Marriage Act sets forth guidelines for determining the percentage amount of child support. 750 ILCS 5/505(a)(1) (West 2000). Section 505(a) of the Marriage Act (750 ILCS 5/505(a) (West 2000)) creates a rebuttable presumption that a specified percentage of a noncustodial parent's income represents an appropriate child-support award. In the case of one child, the minimum amount of child support that the trial court should order is 20% of the noncustodial parent's net income. "Compelling reasons must exist in order to overcome that presumption and permit the court to deviate

from the guidelines." *In re Marriage of Stanley*, 279 Ill. App. 3d 1083, 1085, 666 N.E.2d 340, 341 (1996); see also *In re Marriage of Ackerley*, 333 Ill. App. 3d 382, 396, 775 N.E.2d 1045, 1057 (2002). The question of whether to deviate downward from the statutory guidelines when dealing with above-average incomes presents a dilemma, and the court must balance competing concerns. *In re Marriage of Lee*, 246 Ill. App. 3d 628, 643, 615 N.E.2d 1314, 1326 (1993). A determination on the appropriate amount of child support will be reversed only if the trial court abused its discretion. *In re Marriage of Takata*, 304 Ill. App. 3d 85, 96, 709 N.E.2d 715, 723 (1999).

### 1. *Windfall and Keon C.'s Needs*

■ Respondent complains that the child support is a windfall to petitioner and is more than is necessary to meet Keon C.'s needs. We disagree. This court in *In re Marriage of Bush*, 191 Ill. App. 3d 249, 261, 547 N.E.2d 590, 597 (1989), emphasized that a child-support award is not intended as a windfall to the custodial parent. In that case, however, the facts involved a situation where both parents' individual incomes were more than sufficient to meet the child's needs and allow him the lifestyle he would have enjoyed if the parties had not divorced. The court's holding was clearly limited to such circumstances. The court stated:

> "We now hold that where the individual incomes of both parents are more than sufficient to provide the reasonable needs of the parties' children, taking into account the life-style the children would have absent the dissolution, the court is justified in setting a figure below the guideline amount." *Bush*, 191 Ill. App. 3d at 260, 547 N.E.2d at 596.

In contrast, here, petitioner's net monthly income of $731.64 is nominal compared to respondent's approximate net income of $58,404 and clearly could not be considered sufficient to provide the reasonable needs of Keon C. taking into account his lifestyle before the parties separated and the lifestyle Keon C. would have enjoyed had the parties not separated. A child is not expected to have to live at a minimal level of comfort while the noncustodial parent is living a life of luxury. *In re Marriage of Bussey*, 108 Ill. 2d 286, 297, 483 N.E.2d 1229, 1234 (1985).

■ Petitioner's affidavit of monthly living expenses for her household totaled approximately $4,220. The child support established by the trial court totals $8,500 per month, which now exceeds the monthly expenses for the entire household, but a child's entitlement to a level of support is not limited to his or her "shown needs." Respondent's argument that the amount of child support exceeds the amount petitioner testified that she spent monthly on Keon C.—ap-

proximately $1,000—is but one factor to be considered. The Supreme Court of Illinois in *Bussey*, 108 Ill. 2d at 297-98, 483 N.E.2d at 1234, "decline[d] to accept petitioner's argument that a child is only entitled to receive support for his 'shown needs' when the noncustodial parent is obviously 'enjoying' a standard of living far above that of the child." In *Ackerley*, 333 Ill. App. 3d at 396, 775 N.E.2d at 1057, the trial court awarded $3,000 per month for one child. Even though the award was below the statutory minimum, the ex-husband appealed, claiming that it was greater than the needs of the child. In affirming, the appellate court pointed out that needs are just one of the factors to consider. The court went on to state:

> "[I]t is inferrable that, if the marriage had not dissolved, petitioner's son would have been enjoying a higher standard of living. Had he been enjoying the same standard of living while residing with petitioner, it is apparent that the family's monthly expenses would have been higher." *Ackerley*, 333 Ill. App. 3d at 395-96, 775 N.E.2d at 1057.

Another court stated it slightly differently:

> "[W]here a noncustodial parent has the ability to pay support in excess of the stated needs of the child, a court may order child support in excess of the needs to enable the child to enjoy the standard of living he would have had if the marriage had not been dissolved." *In re Marriage of Rogliano*, 198 Ill. App. 3d 404, 412, 555 N.E.2d 1114, 1119 (1990).

■ At the time of trial, respondent had only one child. Therefore, under the guidelines, he would be responsible to pay monthly child support based on 20% of his income. 750 ILCS 5/505(a)(1) (West 2000)). The parties based their calculations on respondent's 2001 income. Petitioner calculated that 20% of respondent's net monthly income would result in a child-support payment of approximately $13,946. Respondent calculated 20% of his net monthly income and arrived at approximately $12,905 per month. Based upon the relative financial needs and resources of the parties and the standard of living respondent's son would have enjoyed had the parties not separated, the trial court determined that $8,500 per month was adequate. The court did not abuse its discretion.

We recognize that the support of a child is the joint obligation of the parents; however, when one parent earns a disproportionately greater income than the other, that parent clearly should bear a larger share of the support. See *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 38, 687 N.E.2d 1080, 1089 (1997). The record shows that the financial resources of respondent are considerable, and the trial court could infer that they are more than ample to meet his needs. 750

ILCS 5/505(a)(2)(e) (West 2000). In 2001, respondent earned approximately $1.4 million. He testified that his income for 2002 had increased approximately 10% to 20%, and effective November 2003, he would begin earning approximately $4.5 million. Given respondent's considerable income, the trial court was entitled to infer that respondent's son would have enjoyed a high standard of living had the parties not separated. 750 ILCS 5/505(a)(2)(c) (West 2000). The resources of petitioner, conversely, are much smaller. 750 ILCS 5/505(a)(2)(b) (West 2000).

## 2. Child From a Different Relationship

Respondent argues the child support exceeds the needs of petitioner and Keon C. and, therefore, petitioner's other child from a different relationship would ultimately receive a benefit from the child support he provides to Keon C. Respondent relies on *People ex rel. Graham v. Adams*, 239 Ill. App. 3d 643, 646, 608 N.E.2d 614, 616 (1993), which held no duty existed on the part of the respondent to support either the petitioner or her other children. However, *Graham* is not analogous to the present case.

In *Graham*, the trial court actually deviated downward from the guidelines, ordering the noncustodial father to pay $400 a month in child support. The court recognized that the custodial mother not only cared for respondent's son, but also two other children from other relationships, and was expecting another child, also from another relationship. In addition, she had received public aid payments for much of the time since the birth of the first child and supported her family on approximately $1,600 per month. Under the guidelines, the father should have been required to pay approximately $1,600 per month. If the guidelines were strictly followed, the court found respondent would either be supporting other members in the family, or his son, for expenditure purposes, would be treated differently from the other family members. *Graham*, 239 Ill. App. 3d at 646, 608 N.E.2d at 616. The court concluded that when confronted with a case such as that, a balancing test must be employed. *Graham*, 239 Ill. App. 3d at 647, 608 N.E.2d at 617. The trial court is best suited to make this type of determination. *Graham*, 239 Ill. App. 3d at 647, 608 N.E.2d at 617. The appellate court specifically stated that it was not determining whether the child-support payments of $400 per month were sufficient. Rather, it decided that the issue needed to be remanded for further hearing and application of the balancing test. The court noted that the trial court did not make an "express" finding of reasons for deviation from the guidelines, but the trial court determined that " 'child support should be awarded in a sum less than [the minimum

guidelines] due to the needs of the minor and the substantial income of [respondent].' " *Graham*, 239 Ill. App. 3d at 647, 608 N.E.2d at 617.

*Graham* did not "stress" that the standard-of-living factor should receive less emphasis than other child-support factors in a case where the custodial parent has another child, as respondent contends. The court simply stated that the "balancing test requires consideration of all factors as set forth in section 505(a)(2) of the Marriage Act, with an *adjustment to and possibly less emphasis* on section 505(a)(2)(c) [(standard of living)] [citation]." (Emphasis added.) *Graham*, 239 Ill. App. 3d at 647, 608 N.E.2d at 617. *Graham* simply recognizes that when the custodial parent has another child, a balancing test is necessary on a case-by-case basis, some cases "possibly" requiring less emphasis on the standard of living.

In the present case, the trial court specifically discussed the guidelines outlined in section 505(a) (750 ILCS 5/505(a) (West 2000)) and followed *Graham* in reaching its decision, in fact deviating substantially downward from the guidelines. The court acknowledged that it had minimized the importance of subsection (c) (standard of living) of the guidelines in making its decision but, nonetheless, recognized that the amount ordered also took into consideration the standard of living Keon C. enjoyed while living with his father. The court stated, in part:

> "Taking into consideration the affidavit of income and expenses filed by the [p]etitioner, particularly as it relates to Keon, and further taking into consideration all of the factors set forth in [s]ection 505(a)(2) ***, the [c]ourt finds it reasonable that [r]espondent pay to the [p]etitioner the sum of $8,500 a month support. This sum will allow [p]etitioner to pay for day[-]care expenses, clothing[,] and entertainment events, as well as towards daily living expenses for Keon. *** Keon will be afforded individual opportunities due to the support paid by his father, such as the child care and perhaps pre[ ]school educational and curricular opportunities that he now does not have access to. While item (c) of the guidelines (standard of living) has been minimized in the [c]ourt's decision, the amount ordered takes into consideration the standard of living Keon enjoyed while living with his father for that brief period of time. It also takes into account the financial resources and needs of his custodial parent, and the fact that for approximately two months out of every year he will live in his father's care."

The court found the current support of $3,000 was insufficient, but the full 20% would be a windfall. See *Bush*, 191 Ill. App. 3d at 261, 547 N.E.2d at 596-97 (the court is "not required to equate large incomes with lavish life-styles. Neither are the courts required to

provide opulence and excess as an award for child support simply because it exists for one of the parties"). Here, clearly, the trial court recognized that awarding petitioner 20% of respondent's 2001 income would amount to an excess and to "some" windfall to petitioner and her son from another relationship, and the court appropriately deviated downward from the 20% guidelines. Under these circumstances, the trial court did not abuse its discretion in setting child support at $8,500 a month.

## B. Medical Expenses

Respondent next argues that the trial court erred in requiring him to pay all of his son's uncovered medical expenses. We disagree.

■ The trial court has discretion to order payment of a health insurance premium, and the trial court's ruling will not be disturbed on review absent an abuse of discretion. *In re Marriage of Raad*, 301 Ill. App. 3d 683, 688, 704 N.E.2d 964, 967 (1998); *In re Marriage of Schroeder*, 215 Ill. App. 3d 156, 162, 574 N.E.2d 834, 838 (1991). Similarly, despite discernable guidelines on contingent medical expenses not covered by insurance, the trial court also has discretion to order the payment of uncovered and extraordinary medical expenses. *Raad*, 301 Ill. App. 3d at 688, 704 N.E.2d at 967; *Schroeder*, 215 Ill. App. 3d at 162, 574 N.E.2d at 838.

In the present case, the trial court was fully aware of the financial position of both parties. The court ordered respondent's insurance coverage to be primary and petitioner's secondary and also ordered respondent to be responsible for all uncovered medical expenses. In view of the parties' disparate financial circumstances, the court did not abuse its discretion in ordering respondent to pay all uncovered medical expenses.

## C. Attorney Fees

■ Respondent also argues that the trial court erred in requiring him to pay all of petitioner's attorney fees. We disagree.

Section 17 of the Parentage Act of 1984 (Parentage Act) (750 ILCS 45/17 (West 2000)) authorizes the trial court to order respondent to pay some or all of petitioner's attorney fees and costs after considering the factors specified in section 508 of the Marriage Act (750 ILCS 5/508 (West 2000)). The propriety of an award of attorney fees is dependent upon a showing by the party seeking the award of an inability to pay and a demonstration of the ability of the other party to do so. *In re Parentage of Janssen*, 292 Ill. App. 3d 219, 225, 685 N.E.2d 16, 20 (1997). An award of attorney fees will not be reversed absent an abuse of discretion. *Janssen*, 292 Ill. App. 3d at 225, 685 N.E.2d at 20.

In the present case, the trial court ordered respondent to pay

petitioner's attorney fees of $4,387. Respondent admits that he has the ability to pay petitioner's attorney fees, but he submits that his ability to pay the fees is not the issue. Rather, the issue is whether petitioner lacks the ability to pay her own attorney fees. Respondent argues that she has the ability and predicates his position on the fact that she received a lump-sum payment for the child-support arrearage ($125,000) and on the amount of monthly child support the trial court ordered him to pay her ($8,500). However, these monies were for child support for the parties' son, not for her personal use or payment of attorney fees.

In 2001 respondent earned $1.4 million per year, approximately $58,404 a month as compared to petitioner's income, which was $731.64. In addition, respondent's income was predicted to increase to $4.5 million effective November 1, 2002, as a result of a contract he signed with the Sacramento Kings. In addition, the record demonstrates that respondent provides approximately $15,000 to $20,000 monthly to his financial adviser to invest on his behalf. In contrast, petitioner is currently attending college in a graphic design program and working part-time, earning approximately $9.93 per hour, and petitioner owns no real estate. Under the circumstances here, we cannot say that the trial court abused its discretion in ordering respondent to pay petitioner's attorney fees.

## D. Contempt Finding

### 1. *Due Process*

■ Respondent argues that his due process rights were violated when he was not properly served with the petition for rule to show cause.

In an indirect civil contempt hearing, respondent is only entitled to minimal due process, which consists of notice and an opportunity to be heard. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 53, 558 N.E.2d 404, 421 (1990). In the present case, when the trial court issued the rule, the burden shifted to respondent to show cause why he should not be held in contempt. 134 Ill. 2d R. 296(l)(2).

Respondent was provided sufficient due process. The December 11, 2002, hearing was not held on the rule to show cause. The court gave the parties until December 16, 2002, to submit briefs on the issues, which is actually 11 days from the date the rule to show cause was mailed, thereby providing respondent the opportunity to show compliance with the court's order or an acceptable reason for noncompliance. *In re Parentage of Melton*, 321 Ill. App. 3d 823, 829, 748 N.E.2d 291, 296-97 (2001). Moreover, respondent filed his documents by December 16, 2002. Therefore, we conclude that respondent

was given an opportunity to brief his arguments and present them to the court. We find respondent's due process rights were not violated.

## 2. *Indirect Civil Contempt*

■ Respondent argues that the trial court erred in finding him in indirect civil contempt of the court's October 18, 2002, order. He contends that at the time the petition for rule to show cause was entered, neither the monthly child-support payment nor the arrearage was due. In addition, respondent argues that the issue of the insurance card was moot because he had already provided it to petitioner.

The record indicates that respondent paid the full arrearage on January 14, 2003. In addition, the record indicates that respondent provided a copy of what was represented to be an insurance card for Keon C. on January 22, 2003, and respondent's attorney represented that the actual card was expected within 30 days. Paying the entire arrearage and providing a copy of the insurance card purged these issues and rendered the contempt issue moot.

The other purge provision in the trial court's contempt order was "[m]aintenance of the current support order consistent with the October 18, 2002, order." The trial court's written October 18, 2002, order does not specifically state what day the child-support payment is due. However, the record is clear that the trial court intended the support to be due the first day of each month. When the court ordered the parties to calculate the arrearage, it directed them as follows: "[figure] up to the first payment of support under this [o]rder [of October 18, 2002], which is the first Friday in November 2002." The first Friday in November 2002 was actually November 1, 2002. The temporary child support order entered August 1, 2001, had likewise ordered child-support payments to be due on the first day of each month.

The court clearly intended the child-support payments be due the first of the month. The trial court actually found that respondent's argument that he did not know when child support was due was "incredulous[.] The support payments in this case have always been due on the first (1st) of each month." We, therefore, remand and direct the trial court to modify its order to specifically provide that the child support payments are due the first day of each month.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment as

modified and remand for the trial court to modify its order consistent with this opinion.

Affirmed as modified and remanded with directions.

MCCULLOUGH, J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent and would reverse and remand the decision of the trial court. No reasonable person could take the position that $8,500 per month is an appropriate child-support award for a one-year-old child.

I have no problem with the proposition that a child-support award is not limited to the child's minimum needs, that a court may also consider the standard of living the child would have enjoyed if the marriage had not been dissolved. *Bussey*, 108 Ill. 2d at 297, 483 N.E.2d at 1234. Nor do I have any problem with the proposition that when one parent earns a disproportionately greater income than the other, that parent should bear a larger share of the support. *In re Marriage of Garrett*, 336 Ill. App. 3d 1018, 1023, 785 N.E.2d 172, 176 (2003). Nevertheless, a child-support award should not be a windfall to the custodial parent. *Bush*, 191 Ill. App. 3d at 261, 547 N.E.2d at 597; *Singleteary*, 293 Ill. App. 3d at 36, 687 N.E.2d at 1088. This award cannot be justified by any standard-of-living argument. The needs of a one-year-old child are simple. It matters little to a one-year-old whether he rides around in a Mercedes or in a Chevrolet.

How can this award be justified? We are given two responses: (1) the father *makes $4.5 million* a year, and (2) this award is less than the 20% guidelines amount. The fact that the father can afford it does not justify a windfall to the custodial parent. In *Bussey*, a windfall to the custodial parent could perhaps have been justified as a maintenance award. Maintenance, however, cannot be awarded in this Parentage Act case. See *Graham*, 239 Ill. App. 3d at 645-46, 608 N.E.2d at 616 (noting that *Bussey* was a marriage dissolution case). As far as the guidelines are concerned, it is recognized that they do not work well in cases of very high or very low income. See *Department of Public Aid ex rel. Nale v. Nale*, 294 Ill. App. 3d 747, 754, 690 N.E.2d 1052, 1057 (1998) (utility of the statutory child-support guidelines decreases as the incomes of the parties increase); *In re Marriage of Kern*, 245 Ill. App. 3d 575, 579, 615 N.E.2d 402, 405 (1993); *In re Marriage of Scafuri*, 203 Ill. App. 3d 385, 392, 561 N.E.2d 402, 406 (1990). The limiting factor on child support in this case is not the income of the noncustodial parent, as it is in most cases. In this case the limiting

factor is the reasonable needs of the child, taking into account the standard of living he would have enjoyed. The award in this case, apparently the largest child-support award ever mentioned in an Illinois published opinion, is far beyond the reasonable needs of the child and serves only to provide an improper windfall for the mother.

The careers of professional athletes are notoriously uncertain. It may have been possible for the trial court to establish a "separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties." 750 ILCS 5/503(g) (West 2002). That has been done in other cases involving professional athletes. See *Finley v. Scott*, 23 Fla. L. Weekly Supp. 51, 707 So. 2d 1112 (1998) (discussed in 1 Gitlin on Divorce § 10—3(i)(4) (3d ed. 2003)). In *Finley*, child support was set at $5,000 per month but the award was divided so that $2,000 per month would be paid to the mother and $3,000 would be paid into a trust for the child. That was not done in this case, however, and it is possible that the child support currently being paid will have been spent long before the child is emancipated.